Magruder, Trustee *v.* Hattiesburg Trust & Banking Co.

[67 South. 485.]

1. Equity. *Pleading. Cross-bill. Bankruptcy. Trustees. Powers. Corporations. Deeds of trust. Construction. Franchise.*

    Where stockholders. of a trust company filed a bill to set aside an agreement, whereby the trust company guaranteed the payment of bonds issued by a foundry company, and also sought to have the trust company relieved of all obligations connected with and growing out of the arrangement and the trust company filed a cross-bill to foreclose a trust deed given to secure payment of the bonds, and sought subrogation to the rights of the bondholders as to those bonds which it had taken up under an agreement. Under Code 1906, section 587, providing that a defendant in a chancery suit may make his answer a cross-bill, and may introduce any new matter therein material to his defense, a cross-bill by the trustee in bankruptcy of the foundry company, whereby he sought to set aside a deed of trust securing the bonds, and to recover, as preferences, certain named payments made to the trust company, was not subject to demurrer, as introducing new matter not germane to the original bill, for such matters did not violate the rule that a cross-bill must be ancillary to the original bill, so as to complete the determination of the matters in litigation.

2. Bankruptcy. *Trustees. Powers.*

    In such case the trustee in bankruptcy of the foundry company, one of the defendants to the original bill, was a proper party to the suit, and the court was right in permitting him to appear as a party defendant and interpose defense by filing his answer and making it a cross-bill.

3. Corporations. *Deed of trust. Construction. Franchise.*

    Code 1906, section 904, declaring that a mortgage or deed of trust conveying the franchise or income or future earnings of any corporation, shall not be valid, it not violated, where a deed of trust described the property as "all of the following real estate, plants, factories, grounds, charters, machinery rights, privileges, franchises, and other property, to wit: The plants and property now belonging to the company," and where the deed of trust further described the real estate, the buildings and machinery of the company, and finally declared that it was the

intention to convey all the property of every kind and description owned by the company and situated at its plant, except merchandise, mill supplies, locomotives, etc., kept for sale. Since neither the future earnings nor the franchise of the corporation, which is the privilege conferred by the government on corporations to exist, or other powers conferred, were conveyed, for the deed of trust conveyed only that property specifically described.

APPEAL from the chancery court of Forest county.
HON. W. A. SHIPMAN, Special Chancellor.

Bill by Mrs. Mary P. Crane and another against the Hattiesburg Trust & Banking Company and the Watkins Machine & Foundry Company. From a judgment sustaining demurrers to the cross-bill of J. C. Magruder, trustee in bankruptcy, he appeals.

The facts are fully stated in the opinion of the court.

*T. C. Hannah* and *J. T. Haney,* for appellant.

*Hill & Hill, Stevans & Cook, S. E. Travis, B. E. Eaton,* and *Hathorn & Hearst,* for appellees.

Reed, J., delivered the opinion of the court.

The original bill of complaint in this cause was filed by Mrs. Mary P. Crane and Mrs. Fannie B. Perkins, nonresident stockholders of the Hattiesburg Trust & Banking Company. Complainants sought the cancellation of a certain contract between the Hattiesburg Trust & Banking Company and the Watkins Machine & Foundry Company, whereby the trust company guaranteed the payment of certain bonds issued by the foundry company, and also sought to have the trust company relieved from all obligations and liabilities connected with and growing out of the business arrangement. The trust company, the foundry company, and the several holders of the bonds were made parties defendant to the bill. It was charged that the trust company was without authority or power under its char-

ter, or under the law, to guarantee the bonds of the foundry company, and that such act, in so doing, was *ultra vires,* illegal, and void. The foundry company executed a deed of trust on certain of its property to secure the payment of its bonds.

Complainants in their original bill prayed that the contract between the trust company and the foundry company, guaranteeing the payment of the bonds, be canceled, set aside, and held for naught; that a decree be entered against the holders of the bonds for such amounts as had been paid to them by the trust company; that the trust company be enjoined from paying any other of the bonds out of its own funds, and should restore to the foundry company such bonds as had been given as an inducement to enter into the guaranty; that the trust company be enjoined from undertaking to operate the plant and business of the foundry company, as stipulated in the contract; that, the terms and conditions of the deed of trust having been broken by the foundry company, the same be foreclosed and a receiver appointed, pending the sale, to take charge of and preserve the property included therein if the court deemed best; that the bondholders be enjoined from suing the trust company at law upon the guaranty of the bonds, and for general relief.

The trust company filed an answer which was made a cross-bill, the allegations of which are generally the same as those in the original bill, and the relief prayed for generally the same. It offered to return the bonds of the foundry company to the amount of twelve thousand dollars, which had been placed with it as an inducement or *bonus* to guarantee the bonds and interest. The total bond issue amounted to sixty-five thousand dollars.

The trust company was trustee in the deed of trust executed by the foundry company, and in its cross-bill prayed also for foreclosure of the instrument. It prayed for a decree against the bondholders for the amounts

of the bonds, with interest, which it had already paid
to them, or that the court would decree that it was the
legal and equitable owner of the bonds which had been
so paid and taken up. To fully show the relief sought
by the trust company relative to the recovery of the
amounts already paid out by it in taking up bonds of
the foundry company, and relative to the recovery of
the amount of certain bonds received from the foundry
company for moneys advanced by the trust company
for the purpose of paying off creditors of the foun-
dry company existing at the time of the issuance of the
bonds, all of which amounts the trust company prayed
should be paid first out of the proceeds of the sale of
the property under the deed of trust given to secure
the bonds, we quote at length from the prayer of the
cross-bill as follows:

"Cross-complainant, in addition to the foregoing
prayer specifically prays that the cross-defendants here-
in, whose bonds and interest coupons cross-complainant
has paid as above set forth, shall repay the same to-
gether with interest thereon to cross-complainant, the
amount thereof to be determined by this honorable court,.
and that cross-complainant have decree against cross-
defendants respectively for the amounts so found to·
have been paid by them to cross-complainant, with legal
interest thereon; that, if mistaken in this, then cross-
complainant prays that this court decree that it is a
legal and equitable owner of the bonds, and interest
coupons so paid by it to cross-defendants, respectively,.
as hereinabove set forth; and that, out of the proceeds·
of a sale of the property included in the said deed of
trust securing the said bonds, cross-complainant be·
paid the amount of said bonds, interest coupons, and in-
terest, so received from cross-defendants, as aforesaid,.
and its bonds amounting to $——, received from Wat-
kins Machine & Foundry Company, for moneys advanced
by cross-complainant for the purpose of paying off other

creditors of the said Watkins Machine & Foundry Company existing at the time of the issuance of the said bonds, and that all of the same be paid to cross-complainant in full, out of the said proceeds, before any of the other bonds now held by cross-defendants, or any of them, shall be paid. And, if mistaken in this, then it prays that it be decreed to be a legal and equitable owner of said bonds and interest coupons, and that, in a sale and distribution of the proceeds of the property included in said deed of trust, cross-complainant shall share equally with the cross-defendants therein, receiving its *pro rata* share with cross-defendants of the assets and moneys arising from a sale of the said property included in said deed of trust, share and share alike with cross-defendants herein, if there shall not be enough to pay them all in full.''

It will be seen that the relief sought by the trust company in its cross-bill is the cancellation of the contract guaranteeing the payment of the bonds, the foreclosure of the deed of trust given to secure the bonds, and the recovery of the amounts paid in taking up the bonds, and which had been paid in settlement of indebtedness owing by the foundry company, evidenced by bonds held by the trust company, which amounts it asked should be paid out of the proceeds of the sale under the deed of trust, before the payment of other sums secured thereby. Answers were filed by the bondholders to the original bill of complaint and to the cross-bill of the trust company.

Thereafter the foundry company voluntarily went into bankruptcy, and the appellant, J. C. Magruder, was appointed trustee.

Appellant, trustee in bankruptcy, then filed an answer to the original bill and to the cross-bill, and made his answer a cross-bill against the trust company. In this cross-bill he sought, as trustee in bankruptcy, to recover from the trust company, for the benefit of the bankrupt

estate, large sums of money which he averred had been
received by the trust company from the foundry com-
pany from time to time before the bankruptcy, under
such circumstances as made the same preferences under
the bankrupt laws. He charged that certain sums were
paid by the foundry company to the trust company with-
in four months of the time of the adjudication, and with
knowledge of the trust company of the foundry com-
pany's insolvency, and that such amounts so received
constituted preference, and was a fraud upon other
creditors. Among the different claims which he pro-
pounded for recovery against the trust company were
the following: The sum of three thousand eight hundred
dollars paid out of the funds of the foundry company
for the services of an officer of the trust company ren-
dered the foundry company in assisting in the manage-
ment of its affairs; a certain amount paid out of the
funds of the foundry company for premiums on an in-
surance policy on the life of T. O. Watkins, which policy
was in favor of the trust company; the sum of three
thousand dollars paid out of the funds of the foundry
company to liquidate personal indebtedness of T. O.
Watkins to the trust company; and certain amounts
evidenced by accounts assigned by the foundry company
to the trust company. In his cross-bill appellant also
prayed for the cancellation of a security given by the
foundry company to the trust company for the pay-
ment of seven thousand dollars, the purchase price of
three locomotives, claiming that the trust company
received such security with the purpose and intent of
being preferred over other creditors. He prayed for
an accounting by the trust company for all amounts
collected by reason of the assigned claims. He prayed
that the court would, by proper decree, direct him, as
trustee in bankruptcy, to sell the property included
in the deed of trust, and under the direction of the court
make distribution of the proceeds.

We quote as follows the concluding paragraph in the prayer of appellant's cross-bill:

"This cross-complainant further prays that this court, upon final hearing hereof, fully determine what amounts the said Hattiesburg Trust & Banking Company is indebted to this cross-complainant, as trustee as aforesaid, and that all moneys so found by this court to be owing by the said Hattiesburg Trust & Banking Company to the said Watkins Machine & Foundry Company, or this cross-complainant, be set off and deducted from the interest, if any interest whatever the said Hattiesburg Trust & Banking Company may have in the proceeds of the said sale of said mortgaged property, except, however, the amount that this court may find that the said Hattiesburg Trust & Banking Company has received from the said Watkins Machine & Foundry Company as a preference over the other creditors of the said Watkins Machine & Foundry Company; this cross-complainant praying that all such moneys, security, and effects that have been assigned or in any way delivered to the said Hattiesburg Trust & Banking Company in payment of or as security for any past due indebtedness, and considered by this court as a preference, be paid direct and in full by the said Hattiesburg Trust & Banking Company to this cross-complainant, and that this court, upon final hearing thereof, enter a decree ordering and directing the said Hattiesburg Trust & Banking Company to pay and deliver to this cross-complainant all moneys or other property that may be in its hands by reason of its having received a preference, or otherwise."

It will be seen that appellant was endeavoring, by his cross-bill, to recover from the trust company amounts which he charged belonged to the foundry company and had been improperly diverted, and amounts which he charged were preferences against the general creditors.

Up to this stage of the proceedings no attack had been made upon the validity of the deed of trust executed by the foundry company to secure its bonds. The bond-holders were not made parties to the original cross-bill filed by the appellant. After this an amended and supplemental cross-bill was filed by appellant. In this he charges that the deed of trust includes the corporate franchise, charters, income, and future earnings of the foundry company, and is therefore void as to debts, contracted in carrying on the company's business; and that the bondholders have no lien upon the property embraced in the deed of trust, and he sought therein to have the deed of trust declared invalid, and the property devoted to the purpose of paying general and unsecured creditors. The bondholders were made parties to this cross-bill and it was prayed therein that they be made and considered parties to appellant's original cross-bill.

The case as to one of the bondholders, the Citizens' Bank, was finally disposed of upon demurrer and plea filed by that bank, and no appeal from the decrees sustaining the same has been prosecuted by any of the parties in the case.

The trust company filed a demurrer to appellant's original cross-bill. The other bondholders, with the exception of the Citizens' Bank, filed a demurrer to appellant's original cross-bill and his amended and supplemental cross-bill. These demurrers were sustained by the chancellor, and, from his decree in so sustaining them and dismissing the original and the supplemental and amended cross-bill, appellant has prosecuted this appeal.

We deem it necessary in this consideration to notice specially only two of the grounds of demurrer: First, that which maintains that appellant's cross-bills introduce new matter not germane to the matter involved in the original bill; and, second, that the deed of trust

shows upon its face that the corporate franchise of the foundry company was not conveyed therein, and that it is valid.

As to the ground first mentioned, we quote the statement thereof in the demurrer filed by the trust company, as follows:

"It is a departure from and without the scope and purpose of the original cause, and attempts to set up a cause of action entirely and wholly different from the purpose of the original suit, which was merely a proceeding to cancel a guaranty made by the cross-defendant to the First National Bank of Commerce and others, whereas this proceeding is an attempt to raise questions of the right of the cross-defendant to retain certain collections and securities given it by the Watkins Machine & Foundry Company while insolvent; the said trustee seeking by said cross-bill to recover back said collections, and to cancel said securities and assignments as preferences."

In the other demurrer this ground is stated in the following words:

"The said cross-bill and supplemental cross-bill introduce entirely new matter neither necessary for defense nor in any way germane to the matters involved in the original bill."

An answer may be made a cross-bill by the statute (section 587, Code of 1906), wherein it is provided that:

"A defendant in a chancery suit may make his answer a cross-bill against the complainant, or his codefendant or defendants, or all of them; and may introduce any new matter therein material to his defense, and may require the same to be answered."

A cross-bill is auxiliary to the original bill, and is a proceeding to complete the determination of the matters in litigation. *Thomason* v. *Neeley,* 50 Miss. 310. The matters in a cross-bill must be germane to those involved in the original bill.

In Ency. Pl. & Pr., vol. 5, p. 629, it is stated that a cross-bill is "to obtain full relief for all the parties touching the matters in the original bill, or to bring every disputed matter fully before the court and grant the defendant or defendants some permanent relief against the complainant, or against other defendants, or against both."

We find in this suit, as shown in the original bill of the stockholders of the trust company and in the cross-bill of the trust company the main purpose is that the trust company be relieved from the obligations and liabilities growing out of the agreement and business arrangement made between the trust company and the foundry company, whereby the trust company guaranteed bonds issued by the foundry company. To obtain this relief it was sought to have the agreement declared void because *ultra vires,* and it was further sought to have a foreclosure of the deed of trust given to secure the bonds, so that the application of the proceeds from the sale of the property could be made to the payment of the bonds.

The trust company, in the business transactions with the foundry company, became the holder of some of the bonds. In its cross-bill it sought to be subrogated to the rights of the bondholders as to the bonds which had been taken up by it under the agreement. It further sought a decree of the court directing the payment of the amounts expended by it in taking up bonds and the amounts expended by it in the payment of certain indebtedness owing by the foundry company when the bonds were originally issued. It prayed that such amounts should be paid first out of the proceeds of the sale of the mortgaged property; such payments to be made before any other bonds secured thereby should be paid.

Now appellant, the trustee in bankruptcy, who succeeded to the rights of the foundry company, and also

was the representative of the bankrupt's general creditors, by his cross-bill claimed the right to offset such amounts as might be decreed to be owing to the trust company out of the proceeds of the mortgage sale by his claims against the trust company for preference payments and his claims for other amounts which he asserted would be shown owing by an accounting by the trust company. Thus we have presented, in the pleadings in this suit, disputed matters between two of the defendants to the original bill.

It appears that these matters in dispute between these two defendants are germane to the matters involved in the original bill of complaint. They grew out of and logically followed the main purpose of the bill, as hereinabove stated. They are material to the defense, which it is proper for appellant to make. Appellant had the right in this suit to demand affirmative relief, not only against the complainants in the original bill, but also against the defendant, the trust company. The matters in dispute between these two defendants were proper to be brought fully before the court in order that there might be a complete determination of all the matters in litigation.

We notice in the prayer in the original bill, and also in that of the cross-bill of the trust company, that the court is asked to draw to itself and retain jurisdiction of all matters and controversies touching the rights and liabilities of all of the defendants with reference to the bonds, the validity of the contract of guaranty, and the liability of the trust company to any of the defendants, and further ask that the court would render such full and complete equity to all the parties as they might be entitled to. This is in keeping with our view of this case. Appellant claims a liability by the trust company to the estate of the bankrupt and to the creditors of such bankrupt. These claims are proper to be asserted as a defense and offset to the claims of the trust company,

which it propounds for payment out of the proceeds of the sale of the mortgaged property. In order to render full and complete equity to all parties, these counter-claims of appellant and the trust company should be permitted to be litigated to an end in this suit. We therefore conclude that this ground is not well taken, and that the demurrer should not have been sustained by reason thereof.

Appellant, as trustee in bankruptcy of the estate of the Watkins Machine & Foundry Company, one of the defendants to the original bill, was a proper party in this suit, and the court was right in permitting him to appear as a party defendant and interpose defense by filing his answer and making it a cross-bill. None of the grounds in the demurrer filed by the trust company are well taken, and the chancellor erred in sustaining that demurrer.

We turn now to the ground in the demurrer, filed by the bondholders, that the deed of trust referred to, which instrument is filed as an exhibit to the original bill, does not embrace the corporate franchise of the foundry company and the charter thereof, and does not convey the income and future earnings of the company, as alleged by appellant, and that the deed of trust upon its face shows that it is valid, and is a subsisting and legally binding lien.

Appellant bases his claim that the deed of trust is invalid because it includes the corporate franchise, charters, income, and future earnings of the company, upon section 904 of the Code of 1906, which reads:

"A mortgage or deed of trust conveying the franchise or income or future earnings of any corporation, no matter when or how such corporation was created, shall not be valid against debts contracted in carrying on the business of the corporation."

A reading of the deed convinces us that appellant is wrong in his contention. It is stated in the instrument that the company had determined to secure the payment

of the bonds by executing and delivering to the trustee a deed of trust conveying its plants and properties therein described and set forth. We quote as follows from the description of the property conveyed:

"All and singular of the following real estate, plants, factories, grounds, charters, machinery rights, privileges, franchises and other property, to wit: The plant and property now belonging to the company situated in the city of Hattiesburg, county of Forrest, and state of Mississippi, and more particularly described as follows: Lots seven (7), eight (8)," etc.

Then follows a description of real estate. Then continuing the instrument:

"Together with all the buildings and structures, erections and constructions now or hereafter placed upon the same, to wit: All machinery of every kind and description," etc.

Then follows a description of personal property. The description of property included in the deed of trust then ends as follows:

"It being the intention to convey by this instrument all the property of every kind and description now owned by the said company and situated and being at its plant in the city of Hattiesburg, Mississippi; but all merchandise, mill supplies, locomotives, or other goods and wares kept for sale, barter or trade by Watkins Machine & Foundry Company are expressly excepted from the operation of this deed of trust and are not intended to be embraced herein. It is further understood and agreed that any and all property herein described as embraced in and covered by this trust deed which Watkins Machine & Foundry Company may hereafter acquire and place upon said premises in or about its said plant in the city of Hattiesburg, including all real estate during the life of this trust deed, shall be covered by and included in this trust deed as fully and to all intents and purposes as if the same was accurately described herein."

"To have and to hold the above-described premises, property rights, franchises and appurtenances, unto the said party of the second part, and its lawful successors or assigns forever."

It will be seen that, while the word "franchises" is inserted in the general statement of what is to be conveyed, still no franchise is described, and by the very words of the deed of trust the property conveyed is that which is definitely described in the deed of trust. Such property is first limited in the description to the "plant and property" then belonging to the company, situated in the city of Hattiesburg. It is further limited by the particular description of the real estate included, and then the description of the personal property enumerated. The location of the property is definitely given, and it is also particularly described. A general description may be restricted by a particular one, and the particular description will control.

It will be noted that, wherever the word occurs in the provisions of the deed of trust, it is in the plural, "franchises," not "the franchise." Where it occurs in other parts of the instrument than the description of the property conveyed, it is preceded by the word "said," or word of like import, which, of course, refers it back to the description.

The word "franchise" has various significations. The privilege conferred by the government on a corporation to exist is termed a franchise. Different powers granted to a corporation are called franchises. Particular rights and authorities vested in persons are designated franchises. For instance the right to hold and dispose of property is a franchise which may be bestowed on a corporation. This deed of trust is only upon the property therein definitely described, and does not attempt to convey the corporate franchise or income or future earnings of the foundry company.

The ground in the demurrer filed by the First National Bank of Commerce and others, the bondholders, that

the deed of trust did not convey the franchise or income or future earnings of the corporation, and was therefore invalid as against debts contracted in carrying on the business of the corporation, is well taken.

This appeal was granted by the chancellor to settle the principles of the cause.

*Reversed and remanded.*