# Douglass, *et al. v.* Blake.

### *Bill to Enjoin Foreclosure.*

(Decided November 7, 1914.   66 South. 617.)

1. *Equity; Intervention; Cross Bill.*—Where a chattel mortgagor filed a bill to enjoin foreclosure by certain assignees of a series of notes secured by a mortgage placed as collateral security, and the mortgagee applied for leave to intervene, alleging that certain of the respondents were conspiring to deprive him of his rights, and that he had tendered the debt for which the notes and mortgages were held as collateral security, and had thereby become restored to legal ownership of the notes and mortgages, notwithstanding his tender had been refused, and that since the issuance of the preliminary restraining order, other notes secured by the mortgage had become due and remained unpaid, such mortgagee was not a mere intervenor seeking participation in the relief prayed in the original bill, but was seeking relief on an independent equity, antagonistic to that sought in the original bill, to which he was not a party, and which must be awarded, if at all, on an original bill of intervention in the nature of a cross bill; hence, such bill of intervention was not a mere accessory to the original case.

[Douglas, et al. v. Blake.]

2. *Same; Cross Bill; Allegations.*—The cross bill by an intervenor seeking independent and antagonistic relief to that sought in the original cause need not set out the pleadings and proceedings on record in such cause, but may adopt them by reference.

3. *Same; Petition to File.*—The proper purpose of a petition for leave to intervene and file a cross bill in equity is not to disclose the equity on which the intervening complainant relies, but merely to bring to the attention of the court the facts to be alleged in the bill it is proposed to file, seeking an order permitting it to be filed.

4. *Same.*—Where an intervenor files a petition for leave to file a cross bill and sets up therein facts on which he bases his independent equity, the bill which he subsequently files on leave granted pursuant to the petition, should follow the averments of the petition with substantial accuracy.

5. *Same; Evidence in Original Cause.*—Where a cross bill is filed ·by an intervenor seeking independent and antagonistic relief to that prayed in the original bill, evidence taken in the original cause cannot be considered in determining demurrers to the cross bill of the intervenor.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, Jr.

Original bill by R. J. Dickie and others, against J. F. Thrasher and others, to enjoin the foreclosure of a mortgage, with petition by R. B. Blake, to intervene, which leave being granted, Blake filed his cross bill in accordance with the petition, making C. F. Douglass and W. L. Abbott cross respondents. From a decree overruling the separate demurrers of said Douglass and Abbott to such cross bill, they appeal. Affirmed.

KNOX, ACKER, DIXON & STERNE, and C. F. DOUGLASS, for appellant.

JAMES F. MATTHEWS and ROSS BLACKMON, for appellee.

SAYRE, J.—In a cause pending in the city court of Anniston, equity side, wherein R. J. and W. T. Dickie were parties complainant and J. F. Thrasher, J. E. Hughes, and the Anniston City National Bank

were parties defendant, appellee Blake, in pursuance of the practice indicated in *ex parte Gray*, 157 Ala. 358, 47 South. 286, 131 Am. St. Rep. 62, was allowed to intervene by his original bill in the nature of a cross-bill for the protection of interests and the assertion of rights in the subject-matter of the original suit. Pending the original suit, R. J. Dickie had died, and his legal heirs, with the surviving parties to the original cause, were made parties defendant to the bill of intervention. Appellants, C. F. Douglass and W. L. Abbott, were also made parties defendant on grounds that will be stated so far as they appear. These last-named parties filed joint and separate demurrers, and, the same being overruled, they have appealed.

The facts necessary to be considered, as they appear in the bill and its exhibits, may be fairly stated as follows: Complainant Blake, to secure the purchase price of a livery business he had sold to the Dickies, took 30 notes of $100 each, payable one in each of the 30 months next to follow, and a mortgage on a tract of land and the live stock, vehicles, and harness oppurtenant to the business. These notes and the mortgage securing them he then pledged to the Anniston City National Bank as collateral to secure his personal note of $1,500 to the bank. Afterwards, the Dickies having defaulted in the payment of the two notes first to fall due, complainant, acting with the full consent of the bank, "sold and conveyed unto J. F. Thrasher and J. E. Hughes all of his rights, title, and interest in and to the notes and mortgage of the said R. J. Dickie and W. T. Dickie," in consideration of $200 presently paid—which, we may suppose went to the bank—and their 28 joint notes for $100 each payable to complainant one in each of the 28 months next to follow. The petition for leave to file the bill of in-

tervention, adopted as a part of the bill avers: "That thereafter the said J. F. Thrasher and J. E. Hughes, having thus acquired the title and interest of the Anniston City National Bank and your petitioner to the said notes and mortgage of the said Dickies, transferred in turn their title and interest in said notes and mortgage to the Anniston City National Bank as per written assignment and transfer attached as 'Exhibit C' to the original bill of R. J. Dickie and W. T. Dickie, made a part hereof, with the usual leave of reference thereto."

However, this assignment and transfer does not appear in the transcript before us. Complainant then assigned his Thrasher-Hughes notes to the bank as further security for his indebtedness, thus, as the bill avers, restoring to the bank the pledge of the Dickie notes and mortgage as security for complainant's debt. Afterwards Thrasher, Hughes, and the bank, proposing to exercise an option with which the mortgage armed the mortgagee to declare all the notes due upon default in payment of any of them, were proceeding to foreclose the Dickie mortgage by a sale under the power, when the Dickies filed their bill to enjoin the sale as an abuse of the power and upon that bill procured a preliminary injunction. Pending a final disposition of that suit, the Dickies defaulted on other notes falling due, whereupon Thrasher, Hughes, and the bank again proceeded to advertise a foreclosure sale. Again they were enjoined by a decretal order made upon the filing of a supplemental bill, the order providing, however, that the Dickies should pay into the registry of the court the amount of their notes past due and other notes as they fell due, and that the injunction should stand so long only as they should continue to do so. In the meantime, also, the original bill

in the original cause had been amended. The aver-
ment of the bill of intervention is that the preliminary
injunction, made upon the supplemental bill, is still
in force and effect. In the petition for leave to file
the bill, however, it is stated that the Dickies have
again defaulted, and have failed to deposit the amount
of their notes as they have fallen due. The order for
the injunction on the supplemental bill is copied in
the bill in this cause, but the amended and supple-
mental bills themselves do not appear in the transcript
of the record.

Reading the petition for leave to file the bill of in-
tervention with the bill itself, it appears that the bank,
C. F. Douglass, G. A. Costello, L. M. Abbott, R. J.
Dickie, and W. T. Dickie, conspiring to put complain-
ant's rights in the Dickie mortgage and the Thrasher-
Hughes notes beyond his reach and power of enforce-
ment, have made and procured an assignment of these
securities to "C. F. Douglass, attorney," alleged to have
acted as agent for the Dickies, that Douglass assigned
them to Costello, and that they have been "shifted"
back to the bank. What part Abbott may have taken
in these transactions is not made to appear by the rec-
ord before us. Further it is averred that, while these
securities were in possession of Costello under the cir-
cumstances above stated, complaining intervener ten-
dered to him the amount of his note to the bank, there-
by restoring his legal ownership, notwithstanding his
tender was refused. It is further shown that the bank
denies possession or ownership of these securities, and
the conclusion is that the defendants will not fore-
close the pledge of other collateral deposited in the bank
for the security of the debt which complainant con-
tracted with the bank.

We understand from its prayer that the purpose of the bill of intervention is to have a foreclosure of the Dickie mortgage decreed in order that complainant's debt to the bank may be paid and the collateral securities released and restored to him; the assumption seeming to be that such foreclosure will produce an amount in excess of complainant's indebtedness.

Complainant is not a mere intervener, seeking participation in the relief prayed in the original cause. His relief is sought on an equity independent of and antagonistic to that sought in the original cause, to which he is not a party, and must be awarded, if at all, on an original bill of intervention in the nature of a cross-bill.—*Renfro Bros. v. Goetter, Weil & Co.*, 78 Ala. 311; *Ex parte Printup*, 87 Ala. 148, 6 South. 418; *Talladega Mercantile Co. v. Jenifer Iron Co.*, 102 Ala. 259, 14 South. 743. Such a bill, when allowed and filed, is not a mere accessory to the original cause. It asserts an equity in the subject-matter of litigation, independent of the claims of the parties to the original cause, and not brought to the attention of the court by the pleadings in that cause, but which must needs be adjudicated along with the original cause, to the end that complete justice may be done. We would say, adopting here the analogy of rule 102 of chancery practice, made in cases of supplemental bills and bills of revivor, that it need not recite the pleadings and proceedings of record in the original cause, but may adopt them by reference, whereby they become a part of and necessary to a full understanding of the record of the intervening cause. Proceeding on the new record so made, the court will have before it all matters of controversy between the parties to the two causes thus effectually consolidated, and be able to settle all equities in one decree.

It would seem, further, that in order to ascertain the equity of an original bill of intervention there should be no necessity for reference to the petition for leave to file the bill; the proper purpose of the petition in such case being, not of itself to disclose the the equity upon which the intervening complainant relies, but merely to bring to the attention of the court the facts averred in the bill it is proposed to file, and to invite an order allowing it to be filed. Such a bill "presents new and independent matters, not pertaining to the original cause, and involves the interest of persons not parties to the original cause. It raises new questions, and presents new claims, unknown to the original cause; and its allegations should be regularly presented in the form of a bill."—*Cowles & Ledyard v. Andrews,* 39 Ala. 125. At least it may be said with perfect safety that, if the intervening complainant sees fit to make a statement in his petition of the facts upon which he bases his independent equity, the bill which he files upon leave granted should follow the averments of the petition with substantial accuracy. Such is not the case in the record before us.

Complainant, appellee, by way of argument to sustain the ruling on demurrer, makes in his brief extended quotations from the testimony taken in the original cause. This testimony is not before us, and, if it were, it would not constitute a part of the record of the original cause in such sort that we might look to it in passing upon the demurrers to the bill of intervention.

It will appear from the foregoing statement of the record before us that we are not in a position to pass upon the ruling which appellants have sought to bring under review. Appellants contend that the bill is multifarious, as conjoining unrelated matters and that in

any event they have been unnecessarily and improperly dragged into the controversy. If it should be conceded though we are not at all inclined to make the concession, except perhaps in favor of appellant Abbott, that on so much of the record as we have before us the bill is faulty in both respects, non constat, upon consideration of the entire record, including those parts which have not been copied into the transcript, it would appear that there was ample reason for the chancellor's decree. Accordingly the decree appealed from will be affirmed.

Affirmed.

McClellan, de Graffenried, and Gardner, JJ., concur.