[Blake v. Anniston City National Bank, et al.]

# Blake *v.* Anniston City National Bank, *et al.*

### Bill for Intervention.

(Decided November 23, 1916.   73 South. 114.)

1. **Mortgages; Foreclosure; Indispensable Parties.**—Where the mortgagor seeks to restrain the foreclosure of a chattel mortgage, assigned as collateral by an assignee who held nominal title, having purchased with money furnished by another not a party to the suit, before the bill of intervention was filed, the mortgagee as intervenor was not entitled to the relief sought until the real owner was made a party, since the decree against such assignee would not be effectual.

2. **Fraud; Remedy; Action at Law.**—Where the mortgagee has assigned his chattel mortgage as collateral, and by bill of intervention in the nature of a cross bill, is seeking independent relief in a suit between the mortgagor, and the subsequent assignee to restrain foreclosure, the fact that the mortgagee and intervenor was deceived as to the whereabouts and ownership of his mortgage, his remedy was not in equity, but was by an action at law.

APPEAL from Anniston City Court.

Heard before Hon. THOS. W. COLEMAN, JR.

Bill of intervention in the nature of a cross bill filed by R. B. Blake in an equity case in which the Anniston City National Bank and others were litigating as to whether or not a chattel mortgage should be foreclosed, the mortgage having originally belonged to the intervenor.   From a decree for respondents, the intervenor appeals.   Affirmed.

ROSS BLACKMON, for appellant.   JAMES F. MATTHEWS, and CHARLES F. DOUGLASS, for appellee.

SAYRE, J.—As we said on a former appeal in this case (*Douglass v. Blake,* 189 Ala. 24, 66 South. 617), appellant's bill in this case, though partaking of the nature of a cross-bill, is an original bill of intervention, asserting equities entirely independent of the claims of the parties to the original cause between the Dickies on one hand and Thrasher and others on the other.   In the report of the case in 189th Alabama there appears a statement of the case which need not be repeated.   The purpose of appellant's bill was to have decreed a foreclosure of the mortgage made by the Dickies to him, and by him hypothecated with the

bank to secure his note to the bank, and collateral securities released and restored to him. In other words, as the chancellor has stated, appellant has sought to redeem his collateral to the end that he may have a foreclosure of the same. Appellant has alleged that the title to his collateral—so to speak of the Dickie notes and mortgage he pledged with the bank—was revested in him by a tender of the amount of his indebtedness to the bank, said tender having been made to Costello, who is alleged to have held the collateral at the time under a transfer from the bank; but it appeared in the pleadings filed by defendants, and the proof was without conflict to the effect that, though complainant may have been misled into believing that Costello had title to the collateral, he had none; that the bank's assignment was to Douglass, to whom Acker had furnished the money to buy appellant's note and its security from the bank with the understanding that they were to be held for him (Acker) until Costello, who was helping the Dickies, should refund to him their purchase price; that this was done before appellant's bill was filed; that after appellant's bill was filed Acker, failing to get his money from Costello, foreclosed the mortgage, himself becoming the purchaser, and this was the status of things when appellant's bill was filed. It thus appears without controversy that, at a time when neither Acker nor Blake were parties to any suit concerning the property and there could be no question of lis pendens in favor of one against the other, Acker acquired an interest in the subject of controversy, a title, superior to that of Blake.

(1, 2) The situation then is that appellant seeks to redeem and foreclose a mortgage held and owned by Acker when appellant's bill was filed, and since foreclosed by him, without making Acker a party. It is quite clear, as the chancellor held, that in these circumstances the court was without power to make any final and effective decree, foreclosing the mortgage or disposing of the property. There may be reasons why Acker would be estopped to assert his title, as appellant urges; but such estoppel, if any there be in the facts, cannot be asserted or enforced against him in his absence and without a hearing. The ultimate relief sought by appellant is that he may be put in a position to foreclose his mortgage against the Dickies, and that his mortgage be foreclosed. On the undisputed facts this relief cannot be made effectual by a decree against Douglass and Costello. The last named never acquired any interest whatever in the mortgage,

[Pippin v. The State.]

and, to quote the chancellor's opinion, "Douglass was a mere conduit of the legal title, and while a necessary party for that reason, his merely nominal title will not, in a court of equity, dispense with the presence of the party who owns the substance, while Douglass owned the shadow." Nor does it alter this complexion of the case that Douglass or Costello, one or both, may have deceived appellant as to the whereabouts and ownership of the Dickie mortgage when he went to redeem by a tender of the amount of his original indebtedness to the bank, as appellant alleges. . If they did any actionable wrong, appellant's remedy as against them was by an action at law. Thus, without taking issue with the several propositions of law stated in the appellant's brief further than to say they can avail him nothing in the absence of the owner of the subject of the controversy—a defect in the record which appellant had opportunity to correct before the submission for final decree—we are in agreement with the chancellor that appellant could have no relief on the bill filed by him.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.