S. J. SWITOW v. JACOB SHER, SAMUEL C. LEVENSON, *et al.*

186 So. 519.

Division A.

Opinion Filed February 7, 1939.

*Marion E. Sibley* and *Whitfield & Whitfield,* for Appellant;

*S. P. Robineau, G. M. Budd, Jr.,* and *Troy C. Davis,* for Appellees.

BUFORD, J.—The appeal brings for review order granting petition to intervene signed by the Honorable H. F. Atkinson on March 23, 1938, and recorded on the 24th day of March, 1938, in Chancery Order Book 463 at page 326, and that certain interlocutory order or decree signed by the Honorable H. F. Atkinson on July 5th, 1938, and recorded on the 9th day of July, 1938, in Chancery Order Book 474 at page 427, in which the plaintiff's motion to strike the answer of the intervener and motion to dismiss the cross-bill of complaint of the intervenor L. M. Gerstel were denied.

Appellant poses three questions for our consideration as follows:

I. "Where a plaintiff files a suit at common law as the owner and holder of a promissory note and thereafter files his creditors bill under Section 5035, Compiled General

Laws of the State of Florida for 1927, seeking to set aside alleged fraudulent conveyances, may a stranger to such creditors bill intervene therein, over the objection of the plaintiff, for the sole purpose of contesting plaintiff's ownership of the promissory note?"

II. "May a stranger to a creditors bill, who has intervened therein without order permitting him to intervene otherwise than in subordination to and in recognition of the propriety of the main proceeding, file a cross-bill against the plaintiff for the purpose of trying plaintiff's title to the promissory note sued upon by the plaintiff in a common law action, where the promissory note is not the subject matter of the equity suit?"

III. "Is the subject matter of a cross suit which seeks to try title and ownership of a promissory note germane to the subject matter of a creditors suit which seeks to set aside fraudulent conveyances and hold property subject to the payment of the plaintiff's claim?"

The appellee submits that the second and third questions should be stated differently, or as follows:

"*Second Question*:

"*Cross-bill by Intervenor.*—May a stranger to a creditors bill who has been allowed by the Court to intervene therein for the purpose of asserting his right or establishing his title to a promissory note for the satisfaction of which such creditor's bill was filed, file a cross-bill in said suit against the plaintiff for the purpose of contesting plaintiff's title to such promissory note, upon which a common law action brought by the plaintiff was then pending?"

"*Third Question*:

"*Subject Matter of Cross-bill.*—Is the subject matter of a cross-bill which seeks to try title and ownership of a

promissory note germane to the subject matter of a creditors bill which seeks to set aside fraudulent conveyances and hold property subject to the satisfaction of plaintiff's alleged claim based upon such promissory note alleged in such creditor's bill to be owned by the plaintiff and filed by him in evidence in the creditor's suit?"

Stated either way, the answers to the questions will be the same.

The record shows that in March, 1938, Switow exhibited his creditor's bill in the Circuit Court of Dade County, naming certain defendants, seeking to set aside an alleged fraudulent conveyance alleged to have been made by two debtors named defendants in that suit, one Jacob Sher and one Samuel C. Levenson, under the provisions of Section 3229 R. G. S., 5035 C. G. L,. which is as follows:

"A creditor's bill may be filed in the courts of this State, having chancery jurisdiction, before the claims of indebtedness of the persons filing the same shall have been reduced to judgment, but no such bill shall be entertained by such court, unless the complainants therein shall have first instituted suits in the proper courts at law for the collection of their claims; and no final decree shall be entered upon such creditors bill until such claims shall have been reduced to judgment."

In the bill it was alleged, *inter alia,* "that on February 3, 1938, he instituted a suit against the defendants, The Lev-Sher Realty Co., Inc., Jacob Sher and Samuel C. Levenson, in the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, at Law, the same being entitled, S. J. Switow v. The Lev-Sher Realty Co., Inc., a Florida corporation, Jacob Sher and Samuel C. Levenson, being a suit upon a promissory note claiming damages in the sum of $40,000.00. That said promissory note upon which said suit at law was predicated was made

jointly by Samuel C. Levenson and Jacob Sher and The Lev-Sher Realty Co., Inc. Said promissory note was made payable to Charles Gordon, Inc., and evidenced money lent by the said Charles Gordon, Inc., to the said makers of the said promissory note. Plaintiff purchased said promissory note for value before maturity and is the holder and owner of the same. In the said common law suit brought for the collection of the said money due on said promissory note, process is issued and placed in the hands of the sheriff and the same has been served upon the defendants in said suit. The declaration has been filed in said cause and the plaintiff will speedily prosecute, the same to final judgment."

Attached to the bill of complaint was copy of the note sued on in common law action marked Exhibit A and made a part of the bill, which is as follows:

"No. ................ $14778.48 Miami, Florida, March 20, 1928.

"On Demand .................... after date for value re- ceived we promise to pay to the order of Charles Gordon, Inc. Fourteen Thousand Seven Hundred Seventy-eight 48/100 Dollars Payable at City National Bank of Miami, Florida, with interest thereon at the rate of 8 per cent. per annum from date until fully paid. The maker and endorser of this note further agree to waive demand, notice of non-payment and protest, and in case suit shall be brought .for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection.

"Deferred interest payments to bear interest from maturity at 8 percent. per annum, payable semi-annually.

"Due ................ 193........

"The LEV-Sher Realty Co., Inc.,
"By Sam'l C. Levenson, Pres.
"(SEAL)
"By Jacob Sher, Secy. (SEAL)
"Jacob Sher (SEAL)
"Sam'l C. Levenson (SEAL)"
"(Endorsed on back:)
"Charles Gordon, Inc.
By Charles Gordon, Pres.

The bill prayed for relief against alleged fraudulent conveyances and asked for the appointment of a Receiver under the creditor's bill to take charge of the property alleged to have been fraudulently conveyed.

When the application for appointment of Receiver came on for hearing before the Honorable H. F. Atkinson, Judge of the Circuit Court of Dade County, Florida, on March 23, 1928, L. M. Gerstel as Trustee in Bankruptcy of Charles Gordon, presented to the Judge his petition for leave to intervene in the creditors suit "for the purpose of claiming and asserting and prosecuting the rights to said note as Trustee in Bankruptcy of Charles Gordon."

Neither Charles Gordon nor Charles Gordon, Inc., was party to the law action nor to the suit instituted by way of creditors bill.

The record shows that upon the application for intervention being made the Chancellor called Switow, appellant here and plaintiff in the court below, as a witness and during the examination the note, the cause of action sued on in the law action, was introduced in evidence. At the end of the hearing the Court, over objection of appellant's counsel, announced his intention to allow the petitioner to intervene.

The transcript shows that during examinaton of the witness by Mr. Robineau, Attorney for the Petitioner, the following occurred:

"Q. May I ask you if at future hearings you will make available for us those books of your corporation, showing those entries?

"Mr. Sibley: No.

"The witness: I don't think it necessary.

"Mr. Robineau: Well, I think we will allow the necessity to be judged by the Court, and not yourself.

"Mr. Sibley: As I understand it, these gentlemen own 18 or 20—maybe 30—chain theatres. This is one of the corporations that own some of those theatres. If they want to go up there on depositions, the books will be available. We will be glad to submit the certificate of the auditor, but I don't think we should be required to haul the books from Kentucky.

"The Court: The question was, was he willing to produce them, and he said no. So that is the end of that at the present time. I want to say here that this paper has just been handed me by Mr. Davis. It appears to be a petition to intervene in this cause by Mr. Gerstel, as trustee in bankruptcy. I have glanced through it and it follows the general outline of the preliminary statement made by Mr. Robineau.

"Mr. Sibley: You say you want to hear from Mr. Robineau?

"Mr. Robineau: No; he said it follows the previous statement that I have made.

"Mr. Sibley: If your Honor please, I think the petition for leave to intervene is improper, in that it attempts to attack the title of the Plaintiff in the main suit. As I understand it, intervention must be filed in subordination to the main proceedings. I think they can bring a plenary proceeding, either by replication or otherwise, but this intervention must be filed in subordination to the main proceedings.

"The Court: Well, this is for the purpose of establishing the title to the cause of action sued upon in the other Court. I am going to allow the petition to intervene. Have you got your order?

"Mr. Davis: No sir; I have not the order with me.

"Mr. Sibley: Will Your Honor permit me to attack the intervention on several grounds— —

"The Court: Well, I think you better do that in writing.

"Mr. Sibley: Yes; I prefer to do that in writing.

"The Court: I am going to allow him to file it. I am going to allow him to intervene here."

The Court entered an order, following this announcement, as follows: "That the petition of L. M. Gerstel as Trustee in Bankruptcy of Charles Gordon for leave to intervene be and the same is hereby granted."

Thereafter, the Trustee in Bankruptcy filed his answer to the bill of complaint and also filed a cross bill against the plaintiff and Charles Gordon, Inc. and Charles Gordon, as cross defendants, wherein he alleged, *inter alia*:

"(b) That the defendant corporation, Charles Gordon, Inc., also held a note, dated March 20, 1928, in the principal sum of $7,102.45, payable on demand, executed by Lawrence Properties, Inc., which said note the said Charles Gordon used as his own personal property and negotiated to pay his personal obligations.

"(c) That said defendant, Charles Gordon, Inc., also held a note, dated March 20, 1928, in the sum of $14,778.28, payable on demand, executed by The Lev-Sher Realty Co., Inc. and Jacob Sher and Samuel C. Levenson, which said note is the subject matter of this suit and which said note the said Charles Gordon, individually, handled and negotiated as his personal and individual property, as will be more specifically set forth hereinafter.

"8. That the said Charles Gordon in his schedules in

bankruptcy filed on October 5, 1928, as aforesaid, failed to list among his assets his stockholdings in said corporation known as 'Charles Gordon,' or his equitable or beneficial interest in the properties standing in the name of said Charles Gordon, Inc., but, on the contrary, in his schedules in bankruptcy he listed among his liabilities an indebtedness allegedly due by him to Charles Gordon, Inc., in the amount of $72,055.78.

"9. That on the 20th day of March, 1928, the Lev-Sher Realty Co., Inc., Jacob Sher and Samuel C. Levenson executed and ·delivered a promissory note in the principal sum of $14,779.48, payable on demand to the order of Charles Gordon, Inc., bearing interest at the rate of 8% per annum; that a copy of said note is attached to the bill of complaint filed by S. J. Switow in this cause, and reference thereto is prayed; that, although said note is payable to Charles Gordon, Inc., this cross-plaintiff believes, and therefore avers the facts to be, that the said promissory note was at all times, and particularly during the period of bankruptcy aforesaid, the property of Charles Gordon individually, either legally or equitably; that the said Charles Gordon owned the corporation known as Charles Gordon, Inc., as aforesaid, and used the same as a screen for his personal operations, and that the property of said corporation was, in fact, at all times the property of Charles Gordon, individually, the bankrupt; that the said promissory note has been at all times and is now the property either legally or equitably, of Charles Gordon, the bankrupt, and that this cross-plaintiff, as Trustee in Bankruptcy of Charles Gordon, is entitled to possession of said promissory note for proper administration thereof for the benefit of said bankrupt's estate, and is entitled to a decree to this Honorable Court holding that said note is the property of this cross-plaintiff, as Trustee in Bankruptcy of Charles Gordon.

"10. That said promissory note, referred to in the preceding paragraph was at some time unknown to this cross-plaintiff delivered by Charles Gordon, as the owner of said Corporation known as Charles Gordon, Inc., to S. J. Switow, plaintiff, and one of the cross-defendants herein, a nephew of Charles Gordon, and that this cross-plaintiff believes, and therefore avers the facts to be, that said delivery was made without valid consideration and was made for the purpose of defeating the lawful claims of the creditors of said Charles Gordon, bankrupt, and as a part of a fraudulent scheme on the part of the said Charles Gordon, aided by the said S. J. Switow, to place said note, and the equitable interest of the said Charles Gordon therein, beyond the reach of his creditors and in furtherance of a plan to conceal the assets of said Charles Gordon, bankrupt, and to prevent administration thereof by the Bankruptcy Court;" and prayed: "That upon final hearing of this cause a decree be entered by this Honorable Court decreeing that this cross-plaintiff L. M. Gerstel, as Trustee in Bankruptcy of Charles Gordon, is the owner, either legally or equitably, of that certain promissory note, the subject matter of this suit, dated March 20, 1928, in the principal sum of $14,-779.48, executed by the Lev-Sher Realty Co., Inc., Jacob Sher and Samuel C. Levenson payable on demand to the order of Charles Gordon, Inc.;" and also prayed for general relief.

Thereafter, plaintiff filed his motion to strike the answer of the intervenor and filed his motion to dismiss the cross-bill of the intervenor upon the grounds that neither the cross-bill nor the answer was filed in subordination to, and in recognition of the main proceeding; that it was not filed by leave of the Court, and that it sought to deny the right or cause of action of the plaintiff and the plaintiff's remedy, and that the cross bill did not present a subject matter or

cause of action germane to the subject matter of the original bill of complaint.

The Chancellor entered his order denying both motions and directing plaintiff to file his answer to the cross-bill, to which orders the plaintiff on March 6, 1938, took writ of error to this appeal.

As heretofore stated, the record shows that the intervening cross-complainant had leave of the Court to intervene for the purpose of litigating his claim as Trustee to the note which was the cause of action upon which the law action was based and which suit (the law action) was the basis for the creditors bill.

Section 9 of Florida Chancery Act provides as follows:

"Section 9. Interventions.—Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."

This provision is the same as the last sentence of Federal Equity Rule No. 37 with the interpolation of the words" unless otherwise ordered by the court in its discretion." These words added to our statute make many of the Federal decisions construing Federal Equity No. 37 inapplicable to cases arising under our statute.

The record in this case shows that the Chancellor intended to extend the scope of the Trustees intervention beyond what would have been available under the language of Equity Rule No. 37 but in conformity with Section 9, *supra,* so that the Trustee might assert his title to the promissory note as against the title alleged in the bill of complaint to be in the plaintiff.

In the case of Nelson Bullock Co. v. South Down Development Co., 132 Fla. 495, 181 Sou. 365, we held:

"The sole question we are called on to answer is whether or not South Down Development Company, a purchaser *pendente lite,* may be permitted to intervene in a suit to quiet title brought under sections 5010 to 5019, Compiled General Laws of 1927, notice of *lis pendens* having been filed at the time suit to quiet title was brought.

"It appears admitted that prior to the enactment of the 1931 Chancery Act, Acts 1931 c. 14658, this question was answered in the negative by Peninsular Naval Stores Co. v. Cox, *et al.,* 57 Fla. 505, 49 So. 191, and Intermediary Finance Corporation v. McKay, *et al.,* 93 Fla. 101, 111 So. 531; and other cases of similar import, but it is contended by appellee that the rule was modified by the latter act to permit intervention in cases of this kind by the chancellor in his discretion at any time before final decree is entered.

"Sections 5010 to 5019, Compiled General Laws of 1927, under which the main cause was brought, were embraced in Chapter 11383, Acts 1925, Ex. Sess., which was enacted after the cases relied on by appellant for reversal were litigated. The 1931 Chancery Act was also enacted after the said cases were litigated, Section 9, the pertinent part being as follows:

" 'Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.'

From this, it would seem that, subject to the discretion of the chancellor, intervention in equity causes may be permitted at any time during the progress of the case. In this case, South Down Development Company asserts a superior title to appellant and was permitted to intervene for the purpose of filing its answer to determine this question. We find no error in the decree appealed from. Such is the rule

of the federal courts. Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 S. Ct. 781, 33 L. Ed. 178; Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Dutcher v. Haines City Estates, 5 Cir., 26 F. 2d 669."

So, the question is not whether or not the intervention can be allowed but is whether or not the Chancellor abused his judicial discretion in allowing the intervenor to proceed in the manner indicated in the record. See also Union Trust Co. v. Jones, 16 Fed. (2d Ed.) 236.

On conclusion in regard to this is, that the pleadings show the Trustee, cross-complainant, is an adverse claimant to property which the Trustee claims belongs to the bankrupt estate, to-wit, the note which is the cause of action in Switow's law action, and that his law action is the basis for his creditors bill and, therefore, the note, the *res* claimed by the Trustee, is the basis for Switow's entire litigation.

If the note was by the bankrupt fraudulently endorsed to Switow then Switow has no legal basis for his law action or for his creditors bill and the Trustee in bankruptcy is entitled to have endorsement cancelled and to take over the property as a part of the assets of the bankrupt's estate. The note is now in the possession of the court, having been filed by the complainant in the creditors bill. We think there can be no doubt that under these conditions the court, as a court of equity with the *res* in its possession, and all the parties being now before the court, has authority to adjudicate the ownership of the *res* and the rights of all the parties thereto.

It is well settled that when equity takes jurisdiction of the *res* and of the parties for one proposition it will proceed to the determination of all matters properly presented in relation thereto and will grant full relief. See Commercial Bank v. First National Bank, 80 Fla. 685, 87 Sou. 315; Ringling's Estate v. White, 105 Fla. 581, 141 Sou. 884;

Hartford Ins. Co. v. Brown, 119 Fla. 610, 160 Sou. 661; Malone v. Meres, 91 Fla. 709, 109 Sou. 683; Moore v. Price, 98 Fla. 276, 123 Sou. 768.

It appears from the record that the cross bill was filed "under and by virtue of an order entered by the Honorable H. F. Atkinson, Judge of the Circuit Court, authorizing him to intervene in this suit and also by an order entered by the Honorable T. J. Dowdell, Special Referee in Bankruptcy of the United States District Court for the Southern District of Florida, authorizing him to file an answer and cross bill of complaint herein."

We come now to the second question. As hereinbefore stated, the record shows that the Chancellor permitted the intervention of the Trustee in Bankruptcy who asserted title to the promissory note which was the basis of the law action and the law action was the basis of the suit by way of creditors bill.

To assert and prosecute his claim and to establish his title to the note, it was necessary for the Trustee to go into a court of equity and instead of filing a plenary suit for this purpose he was allowed by the Chancellor to answer the complainant's bill of complaint in the creditor's suit and also to file a cross bill in the creditors suit against the plaintiff and two new parties, all of whom are now before the court. It is a well settled principle that a court of equity abhors a multiplicity of suits and whenever it has jurisdiction of the subject matter and of the parties it will proceed to do justice between all the parties; and that courts of equity may suit proceedings and remedies to circumstances and cases and formulate them appropriately to safeguard, conveniently to adjudicate and promptly to enforce substantial rights to all parties before them. See Alexander v. Hillman, 296 U. S. 222, 80 L. Ed. 192, 56 Sup. Ct. 204.

The question as to whether or not an intervenor may file

a cross bill, it appears to us, has been definitely determined in the case of Ebersbach Construction Co. v. Charles Ringling Co., 100 Fla. 1270, 131 Sou. 148, in which this Court quoted, with approval, the holding of the Supreme Court of Alabama in the case of Curtis v. Curtis, 180 Ala. 64, 60 Sou. 167, where that court said:

"Where one not a party to a pending suit has a claim or lien on the property or is interested in the subject matter and desires for his own protection to intervene to assert his independent right, and raise new issues, he must do so by a formal original bill in the nature of a cross or supplemental bill containing appropriate allegations."

In the case of Dougherty v. Commercial Court Holding Co., 104 Fla. 595, 140 Sou. 470, we said:

"The function of a cross bill is to secure affirmative relief for the defendant in regard to the matter in controversy and to obtain a complete determination among the parties of all the elements of dispute involved in or connected with the suit."

"It has been said that the confinement of a cross bill to the matter of the original bill is only a usual, or rather is not a universal rule, and that it may become inoperative where some special circumstances such as insolvency and nonresidence exist, which render it necessary to depart therefrom in order to avoid irreparable injury."

The record in the instant case shows that the original complainant, cross-defendant Switow, is a non-resident.

In the case of Morgareidge v. Howey, et al., 75 Fla. 234, 78 Sou. 14, we held:

"The interest which will entitle a person to intervene must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim

to the demand in suit or some part thereof, or a claim to or lien upon the property or some part of it, which is the subject of the litigation.

"Persons having an interest in the subject of a suit in equity and who are either necessary or proper parties to such suit, if not made so by the complainant, may come in by way of application to intervene and be made parties complinant or defendant, to the end that their interests may be adjudicated and protected in such suit."

The Supreme Court of Alabama, in the case of Reynolds v. Reynolds, 190 Ala. 468, 67 Sou. 293, said:

"A cross bill is allowed to enable one, not a party to the original suit, to come into the cause, and, by appropriate averments, show his right to be heard therein, and by appropriate process in his matter bring before the court those parties who claim interests adverse to him." See Douglass, *et al.*, v. Blake, 189 Ala. 24, 66 Sou. 617, in which it was said:

"Complainant is not a mere intervenor, seeking participation in the relief prayed in the original cause. His relief is sought on an equity independent of and antagonistic to that sought in the original cause, to which he is not a party, and must be awarded, if at all, on an original bill of intervention in the nature of a cross-bill. Renfro Bros. v. Goetter, Weil & Co., 78 Ala. 311; *Ex parte* Printup, 87 Ala. 148, 6 South. 418; Talladega Mercantile Co. v. Jenifer Iron Co., 102 Ala. 259, 14 South. 743. Such a bill, when allowed and filed, is not a mere accessory to the original cause. It asserts an equity in the subject matter of litigation, independent of the claims of the parties to the original cause, and not brought to the attention of the court by the pleadings in that cause, but which must needs be adjudicated along with the original cause, to the end that complete justice may be done."

What we have already said, in effect, answers the Third question because we have heretofore pointed out that the title and ownership to the promissory note by the original complainant is essential to the maintaining of the law action and maintaining the law action is an essential prerequisite to the maintaining of the creditor's bill.

There can be no doubt that it is a rule of Chancery Practice that matters sought to be investigated by cross bill must be germane to the subject matter involved in the original bill, Lovett v. Lovett, 93 Fla. 611, 112 Sou. 768; Turner v. Utley, 93 Fla. 910, 112 Sou. 837; and Douglass v. Blake, *supra*.

In the Lovett case we held that "a cross bill must grow out of the matters alleged in the original bill and is used to bring the whole dispute before the Court so that there may be a complete decree touching the subject matter of the suit. (Fletcher Equity Pleading and Practice, 895.) A cross bill is a bill filed by a defendant in a suit against a plaintiff, or some other defendant, or both, in the same suit touching the matter in question in the original bill."

And further in that opinion, we said:

"There is some confusion in the use of this term 'subject-matter' in some of the cases dealing with the question of jurisdiction. Sometimes it is applied with reference to the power of the court to deal with the class of cases to which the particular case belongs, and sometimes it is applied to the *res* within the court's control or under its jurisdiction, or to the rights, that is, the questions of personal or property rights, in controversy before the court in the particular case."

In this case the debt evidenced by the promissory note is the basis for the entire controversy. Not only is this true, but the note is the *res* and is within the court's control and

under its jurisdiction.   See Price v. Stratton, 45 Fla. 535. 33 Sou. 644.

In Magruder v. Hattiesburg Trust & Banking Co., 108 Miss. 857, 67 Sou. 485, it was held:

"Code 1906, No. 587 provides that a defendant in a chancery suit may make his answer a cross bill, and may introduce any new matter therein material to his defense. Stockholders of a Trust Company filed a bill to set aside an agreement, whereby the trust company guaranteed the payment of bonds issued by a foundry company, and also sought to have the trust company relieved of all obligations connected with and growing out of the arrangement.   The trust company filed a cross bill to foreclose a deed of trust given to secure payment of the bonds, and it sought subrogation to the rights of the bondholders as to those bonds which it had taken up under the agreement.   *Held,* that a cross bill by the trustee in bankruptcy of the foundry company, whereby he sought to set aside the deed of trust securing the bonds, and to recover, as preferences, named payments made to the trust company, was not subject to demurrer as introducing new matter not germane to the original bill, for such matters did not violate the rule that a 'cross-bill' must be auxiliary to the original bill, so as to complete the determination of the matters in litigation."

There appears to have been no abuse of judicial discretion by the Chancellor and the cross-bill appears to be germane to the subject matter of the original suit.

The orders appealed from should be affirmed and it is so ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

Justice BROWN not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.