D. S. Lovett and H. W. Lovett, *Appellants,* v. C. C. Lovett, Mrs. H. B. Neel, Mrs. Eunice Burnett, Mrs. Julia Bragdon, Mamie Lovett Fletcher, Ben Charles Allen, George Allen and Mrs. Susie Lovett, *Appellees.*

En Banc.

Opinion Filed March 29, 1927.

Petition for Rehearing Denied May 11, 1927.

Syllabus.

1. When the parties, without objection or question as to the mode of procedure, go on to a hearing, and a court of equity hears and determines the controversy, which is of such a character that jurisdiction may be given by consent, neither party should thereafter be heard to complain as to the court's jurisdiction.

2. The rule that jurisdiction of the subject matter, that is, the power of the Court to adjudicate the class of cases to which the particular case belongs, cannot be conferred by the acquiescence or consent of the parties, is universally recognized.

3. Before the potential jurisdiction of the subject matter—the power to hear and determine—can be exercised in a particular case, it must be lawfully invoked and called into action; that is, the parties and the subject matter of the particular case must be brought before the Court in such a way that it acquires control and power to act.

4. Generally speaking, there must be a right in dispute between two or more parties; a proceeding commenced under the proper rules of law; process must be served on the opposite party or parties in order that they may have an opportunity to be heard, or the property, if that be the subject matter of the action, must be within the Court's jurisdiction, and the owner or person having the right to claim it, or to be heard,

must be notified as required by law of the pendency of the proceeding, and give a reasonable opportunity to be heard.

5. The jurisdiction and power of the Court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding *sua sponte*.

6. As a general rule, the action of a Court must be called into exercise by pleading and process, prescribed or recognized by law, and such pleading, be it a declaration, bill of complaint, petition, cross-bill or counter-claim, must present a subject matter or cause of action in some form, and must request, either expressly or by necessary implication, the exercise of the power of the Court; and if a Court renders a judgment where it has jurisdiction of the parties, but upon a matter outside of the issues presented by the pleadings, it would ordinarily be held arbitrary and of no effect, as being outside the jurisdiction of the subject matter of the particular case, and upon which the parties had had no opportunity to be heard.

7. The pleading bringing a subject matter before the Court sufficiently to authorize the exercise of its jurisdiction, need not necessarily be sufficient in law to withstand the test of demurrer, but as a general rule it must state, at least inferentially, each material fact necessary to warrant the Court to deliberate thereon and grant the relief accorded.

8. When it is said that a Court has jurisdiction of the subject matter and the parties to a cause, this implies, generally speaking, (1) that the Court has jurisdictional power to adjudicate the class of cases to which such case belongs; (2) that its jurisdiction has been invoked in the particular case by lawfully bringing before it the necessary parties to the controversy, and (3) the controversy itself by pleading of some sort sufficient to that end; and (4) when the cause is one *in rem*, the Court must have jurisdictional power or control over the *res* which is the subject of the controversy.

9. Where a bill seeks a partition of part of a tract of land held in co-tenancy, a defendant co-tenant can, by way of answer, which is ordinarily a defensive pleading, set up as a defense

the failure to pray for partition of the entire tract. Ordinarily, such a suit should include all of the lands of the co-tenancy, and if it does not do so, any party defendant may take appropriate action to bring such omission to the attention of the Court and insist that the omitted land be embraced in the suit and that the persons be made parties thereto whose presence is necessary to the proceeding. Whether this rule would apply where the omitted lands constitute a separate and non-contiguous tract from those described in the bill, though owned by the same co-tenants, is not decided.

10. Where, to a bill of partition, the defense is set up by way of answer that the bill omits a portion of the tract of lands held by the same co-tenancy as that alleged in the bill, the Chancellor may require the complainant to so amend his bill as to include the additional lands or in default thereof dismiss the bill.

11. But where, in a suit for partition, a defendant co-tenant sets up by answer, not as a defense against the bill, but in the nature of a cross-bill or counter-claim, the existence of additional lands of the co-tenancy omitted from the bill or complaint, and prays the Court for the partition of such additional lands along with the lands described in the bill, the Court should require the complainant to amend his bill so as to include such additional lands, or the other parties to the suit should be given an opportunity to be heard upon the prayer set up in the answer, upon appropriate notice or service of process as required by law, before the Court takes action upon such prayer relating to such additional subject matter. If such answer be regarded as a cross-bill, it is insufficient unless it makes the other parties defendants thereto and prays for proper service against them, and if it be regarded as a counter claim under Secs. 3120-3121, Revised General Statutes, the other defendants should be served with copies of same and given an opportunity to reply thereto and be heard thereon as required by such statutes.

12. A cross-bill should state the purport of the original bill, must be confined to such new facts and issues as relate to the subject matter of the original bill, should make all proper

persons entitled to be heard thereon, including the complainants, and the cross-complainant's co-defendants in the original bill, parties defendant to the cross-bill, and pray for proper process against them, which process should be duly served. New and distinct matters, not germane to the subject matter of the original bill, cannot be introduced by cross-bill.

13. It is not generally permissible by cross-bill to obtain relief which the defendant can procure by insisting on the filing of a proper original bill, or proper amendment of an original bill already filed.

14. While the jurisdiction of equity to adjudicate suits for partition is of ancient origin and well established, independent of statute, our practice in dealing with partition suits is more or less statutory. See Secs. 3202-3209, Revised General Statutes.

15. Under such statutes, the proper way in which to bring lands before the Court for partition is, as prescribed by the statute, "in all cases by bill in chancery," and this Court has held that as a general rule a cross-bill in a partition suit is neither necessary nor proper.

16. If the answer of one of the defendants in this case be considered as a cross-bill, it was insufficient to bring in the minor co-defendants as parties thereto, inasmuch as no process was prayed for or served upon them, and they were not in any way called upon to defend against the same, nor does the record show any appearance or answer by or for them, or any waiver of process by them, or by their guardian *ad litem*, if indeed the latter was legally possible.

17. It was not the purpose·of Chapter 6907 of Laws of 1915, Secs. 3118-3123, Revised General Statutes, to forbid the use of cross-bills in proper cases, although they expressly provide for obtaining affirmative relief upon answers in the classes of cases referred to therein.

18. Under the statutes referred to, if the answer merely sets up new affirmative matter, defensive in character, such as

would be appropriate to an ordinary answer in equity, designed to defeat the purpose of the bill, without asserting any set-off or counter-claim, no reply thereto shall be required without a special order from the Court, and the cause will be deemed at issue upon the filing of the answer.

19. Under these statutory provisions no service of a copy of the answer is required when the set-off or counter-claim therein set up is asserted only against the complainant, but if the counter-claim is one which affects the rights of other defendants, they or their solicitors must be served with a copy of the same within ten days from the filing thereof and given an opportunity to file a reply thereto within the time and as provided for by the statute. If the answer of one of the defendants in this cause be regarded as setting out a counter-claim under the statutory provisions, in view of the fact that the minor co-defendants whose rights were affected by such counter-claim were not served as provided for by the statute, the property described in such counter-claim was not properly brought before the Court as to them, and therefore the decree for the sale of such additional lands, described in the counter-claim, was as to them ineffective and voidable, if not, indeed, entirely void.

20. Under the statutory provisions, a defendant may in his answer set up any counter-claim arising out of the transaction which is the subject matter of the suit, and may, without cross-bill, set out any set-off or counter-claim against the complainant which might be the subject of an independent suit in equity against him, and such set-off or counter-claim so set up shall have the same effect as a cross-suit, so as to enable the Court to pronounce a final judgment in the same suit both on the original and cross-claims.

21. Liberal as the decisions, both in this country and in England, have been in giving to a counter-claim set up in an answer a comprehensive force and effect, our holding is, that, construing Sec. 3120, Revised General Statutes, as a whole, it recognizes the fundamental and cardinal principle that there must be some legal or equitable connection between the matters pleaded as a counter-claim and the matters alleged in the original bill.

22. The use, in the first clause of Sec. 3120, Revised General Statutes, of the words "any counter-claim arising out of the transaction which is the subject matter of a suit," underlies and gives color to the entire section, and the further language regarding "any set-off or counter-claim against the plaintiff which might be the subject of an independent suit in equity against him," is not in conflict therewith, for innumerable instances might be cited wherein the matter set up as a counter-claim (or by an ordinary cross-bill in equity), while connected with the subject matter of the original bill or arising out of a transaction which is the subject matter of such bill, might also afford ample grounds for an independent suit in equity by the defendant against the complainant.

23. Construing Chapter 6907 of the Laws of 1915, now Secs. 3118, et seq., Revised General Statutes, as a whole, in the light of the language used and the fundamental principles of equity practice obtaining in this jurisdiction before and at the time of the passage of the Act, while the term "counter-claim" probably covers a broader scope than the familiar cross-bill in chancery, it cannot be said that by this statute the Legislature intended to provide that a defendant can, in an answer by way of counter-claim, set up a matter constituting an entirely distinct cause of action, foreign to and not connected in any way with the matters stated in the original bill. It must set up matter arising out of or connected with the subject matter of the original bill and germane thereto, as is the case with a cross-bill, or it must, in the language of the statute, set out matter "arising out of the transaction which is the subject matter of the suit."

24. Under the pleadings in this case, there is ground for the contention that the matter set up by one of the defendants in his answer was connected with or arose from the transaction which was the subject matter of the suit, that is, the co-tenancy of the parties to the suit, arising from the death of the common ancestor, which made them his heirs-at-law and, as such, co-tenants of all the lands owned by him at the time of his death, both those described in the bill and the answer, and hence within the scope of the word "counter-claim" as used in the statute.

25. Although the defendant who interposed the counter-claim should have taken proper steps to have required the complainants to amend their bill so as to include all the lands held by the parties as co-tenants, as provided by Secs. 3203, 3205, Revised General Statutes, instead of attempting to bring in the additional lands by way of counter-claim in his answer, this point of procedure was waived by the complainants, and as to them such answer operated to bring before the Court the additional subject matter therein described, so that the complainants are not in a position to raise the question in this Court in so far as the form of procedure *per se* is concerned.

26. The minor co-defendants, not having been served upon the counter-claim as required by the statute, and not having been given an opportunity to be heard, the additional property was not brought into Court by the counter-claim so far as they were concerned, and as to them and their interests therein the Court was without jurisdiction to adjudicate.

27. Secs. 3204, 3205, Revised General Statutes, require a suit in partition to be brought by one or more of several joint tenants, tenants in common or coparceners, against their co-tenants, coparceners, or others interested in the lands to be divided, requiring all of such covenants or coparceners to be made parties to the suit if known, and this Court has held that the rights and interests of necessary and indispensable parties in such suits cannot be adjudicated when they are not properly before the Court.

28. The general rule is that a party is not entitled to appeal from a judgment or decree wholly in his favor; nor are irregularities in chancery practice, committed at the defendant's instance, or by his consent, available to reverse a final decree against him. But a party may appeal from a judgment in his favor when the Court has without his consent committed some error prejudical to him, such as the rendition of a judgment for a less sum than ought to be; or where such irregularities have intervened in the lower court as to render the decree in the appellant's favor in-

valid or nugatory. It is well settled that a party may resort to an Appelate Court to obtain the reversal of a judgment in his favor if it has been so rendered that he sustains injury by it.

29. A decree rendered in the absence of an indispensable party may be reversed, although the objection is urged for the first time in the Appellate Court; and the Appellate Court may of its own motion reverse a decree rendered in the absence of necessary parties.

30. Although the appellants here were complainants in the court below, in whose favor the decree in the partition suit was rendered, and made no objection at the time, they can in this Court assign as error matters affecting the trial court's jurisdiction of the subject matter and of indispensable parties other than the appellants, going to the validity of the decree appealed from; as such appellants were entitled to a valid and effective decree of partition.

31. On an appeal taken within the time required by law from the final decree in a cause, the appellants may assign errors on the prior interlocutory decrees, entered in the cause, though not embraced in the entry of appeal.

32. The procedural errors in this case having been waived by all the adult parties to the cause, and the Court having, though erroneously, proceeded to adjudicate with reference to the interests of the minor co-defendants who were not brought in as to the additional lands described in the counter-claim, this error can be cured in such a way as to validate the proceedings as to all the parties, if the said minors shall have become of age or had their disabilities of non-age removed since the trial of this cause in the court below, provided that within ninety days from the going down of the mandate in this cause they shall enter an appearance in the cause and file a reply to the counter-claim set up in the answer, consenting in effect to the granting of the relief prayed in such counter-claim as to the additional lands, and shall also file in the court below a formal ratification of the orders and decrees rendered by the Chancellor in said cause,

adopting the reports of the commissioners filed therein and accepting their share of the proceeds of the sale of the lands described in both the bill and answer as full compensation for their interests in such lands and the proceeds thereof; in which case the orders and decrees appealed from shall stand and be considered as affirmed; otherwise such orders and decrees shall stand reversed.

An Appeal from the Circuit Court of Madison County; M. F. Horne, Judge.

Reversed with directions.

*Davis* and *Pepper,* for Appellants;

*John F. Harrell,* for Appellees.

### STATEMENT.

BROWN, J.—This case is before us on appeal from the final decree and several interlocutory decrees in a proceeding for partition brought in the Circuit Court for Madison County.

On the 18th day of May, 1918, H. Lovett, a citizen and resident of Madison County, Florida, died seized of certain lands, the description of which appears in the bill of complaint. At the time of his death, H. Lovett was also seized of an undivided two-thirds (2/3) interest in certain other lands, which were the property of a partnership consisting of H. Lovett and his son, D. S. Lovett. The lands so held are described in the separate answer of George Allen, to the bill of complaint. Upon his death, H. Lovett left surviving him, his widow, Mrs. Susie Lovett, and six (6) children, viz.: D. S. Lovett, H. W. Lovett, C. C. Lovett, Mrs. H. B. Neel, Mrs. Eunice Burnett and Mrs. Julia Bragdon. Other heirs of the said H. Lovett were Mamie Lovett

Fletcher and Ben Charles Allen, minor children of Mamie Lovett, who was the child of H. Lovett and George Allen, the surviving husband of Mamie Lovett. After the death of H. Lovett, and before the proceedings began in this cause, Mrs. Susie Lovett, the widow, elected to take a child's part in the estate of H. Lovett, deceased. This having been set aside for her in a manner agreeable to all parties concerned, was later sold by her to the heirs of H. Lovett, each purchasing an interest in her estate in the same proportion as was his or her interest in the estate of H. Lovett, deceased. The lands embraced in the bill of complaint and the answer, as aforesaid, were all of the lands owned by the said H. Lovett upon his death.

On the 10th day of July, 1922, D. S. Lovett, H. W. Lovett, C. C. Lovett, Mrs. Julia Bragdon, Mrs. H. B. Neel and Mrs. Eunice Burnett, the surviving children of H. Lovett, deceased, exhibited their bill in Chancery in the Circuit Court of the Third Judicial Circuit of Florida, in and for Madison County, wherein certain of the lands of which H. Lovett was seized at his death lay, against Mamie Lovett Fletcher, Ben Charles and George Allen and Mrs. Susie Lovett, for a partition of a part of the lands of which H. Lovett was seized at his death. No reason appears in the said bill of complaint why the prayer for partition was confined to a part only of the lands constituting the estate of H. Lovett. Notice of *lis pendens* covering the lands described in the bill of complaint was filed on the 13th day of July, 1922, and an order of publication was directed to the defendants in the partition proceedings, which defendants were non-residents of the State of Florida.

On the 11th of July, 1923, a decree *pro confesso* was entered against Mrs. Susie Lovett; on November 1, 1922, G. W. Tedder, of Madison County, Florida, was appointed *guardian ad litem* for the minor defendants, Mamie Lov-

ett Fletcher and Ben Charles Allen. On November 7, 1922, G. W. Tedder, as guardian *ad litem* for the said minors, filed his answer, in which he neither confessed nor denied the allegations of the bill, but prayed strict proof of each and every allegation contained in the bill of complaint. On the 2nd day of October, 1922, the separate answer of George Allen was filed. This answer begins on page 18 of the Transcript of Record. The answer admitted the death of H. Lovett at the time named in the bill, and that he died seized of the lands which the bill of complaint described. It averred further, however, that H. Lovett, at the time of his death, was seized of an undivided two-thirds (2/3) interest in certain other lands in Madison County, Florida, which the parties complainant and defendant likewise owned as co-tenants. The answer further described these lands and prayed that they, too, might be partitioned by the Court along with the lands described in the bill of complaint. The answer did not contain any prayer for process against any of the parties. None of the defendants except George Allen was a party to this pleading, and the style of the caption was identical with that of the bill of complaint. No exceptions were filed to such answer. Application was made on the 13th day of February, 1923, by the solicitors for the complainants for an examiner to be appointed to take the testimony in the cause. And on the same day, an examiner was appointed by M. F. Horne, Judge of the Court wherein the cause was pending. Without further pleading of any sort, the testimony was taken before the examiner, the hearing being completed December 4th, 1923.

On the 14th day of February, 1924, the Court made an order decreeing the interests of the parties in the land involved in the said cause, except as to defendant Susie Lovett, whose interest was decreed to have been vested in

622    SUPREME COURT OF FLORIDA.

D. S. Lovett and H. W. Lovett v. C. C. Lovett et al.—Statement of Case.

the other parties, and that it should be partitioned, and appointing commissioners to make such partition. This order and decree considered the lands described in the bill and those described in the answer of George Allen as one unit, and decreed the interest of the parties to the cause upon the basis that all of the said lands constituted a unit. The three commissioners appointed by the said order went upon the lands involved therein, viewed them, and on the 3rd day of April, 1924, reported to the Court that the said lands could not be partitioned without manifest prejudice to the parties in interest. The lands described in the bill and in the separate answer of George Allen were considered as one unit by the commissioners making the investigation and report. On April 8th, 1924, the complainants filed exceptions to the report of the commissioners. After argument upon the exceptions filed in the cause, the Court, on the 8th day of May, 1924, referred the matter of partition back to the commissioners already appointed for the pur-pose of partition.

On August 25th, 1924, two of the commissioners appointed to make a partition in the order of February 14th, 1924, viz.: J. Q. Leslie and W. B. Mays, reported to the Court that the lands decreed by the Court in the order of February 14th, 1924, to be partitioned, that is to say, the lands described in the bill of complaint and the separate answer of George Allen, had been viewed and had been partitioned as directed by the decree of the Court. Thereafter, on the 26th day of August, 1924, W. P. Thompson, one of the commissioners appointed by the Court in its decree of February 14th, filed his separate report, in which he stated that he had formerly joined in the majority report, but had struck his name from the said report, upon having changed his opinion of the value of the land under partition, by a further visit to the said land. He reported fur-

ther that the said land, in his opinion, could not be partitioned without manifest prejudice to the parties in interest. On the 30th of August, 1924, George Allen filed exceptions to the report of the majority commissioners, W. B. Mays and J. Q. Leslie. These exceptions of George Allen came before the Court for hearing on the 13th day of June, 1925, whereupon the Court sustained the exceptions, discharging the commissioners appointed in the order of Feburary 14, 1924, and appointing new commissioners to make a partition of the lands involved, viz.: the lands described in the bill of complaint and in the separate answer of George Allen. One of these commissioners was discharged on account of his inability to serve and in his stead another commissioner was appointed. Thereafter, on the 16th day of September, 1925, these commissioners reported to the Court that the lands described in the decree of the Court of February 14th, 1924, could not be partitioned without great prejudice to the owners thereof. This report was, on September 30th, 1925, confirmed by the Court and in addition, the Court, by its decree of that date, ordered that the lands described in the decree of February 14, 1924, should be sold at public sale to the highest bidder. This decree described the lands involved, in which description the lands set out in the bill of complaint were described as Tract One and those included in the separate answer of George Allen designated as Tract Two.

The commissioners on the 2nd day of November, 1925, reported to the Court that in accordance with the decree of the Court dated September 30th, 1925, they had sold the lands ordered in said decree to be sold, at public auction on the 2nd day of November, 1925. The commissioners reported further than Tract One of the said lands was sold to Mrs. Julia Bragdon, Mrs. Eunice Burnett, C. C. Lovett

and Mrs. H. B. Neel, and that Tract Two of the said land was sold to D. S. Lovett.

On the 16th day of November, 1925, the day named by solicitors for complainant upon which they would apply to the Court for a confirmation of the report of sale submitted by the commissioners, H. W. Lovett and D. S. Lovett presented to the Court exceptions to the said commissioners' report. Upon the hearing of said exceptions, the Court announced that it would confirm the report of the commissioners; whereupon, the objector, H. W. Lovett, *ore tenus,* moved the Court for an amendment of the report of the said commissioners, permitting the substitution of the name of D. S. Lovett as purchaser of Tract One of the lands involved, in the place of C. C. Lovett, Mrs. Julia Bragdon, Mrs. Eunice Burnett and Mrs. H. B. Neel, upon the said D. S. Lovett paying the sum of Fifty-five Thousand Five Hundred Dollars ($55,500.00), instead of Fifty-one Thousand Six Hundred Dollars ($51,600.00) named in the report of the commissioners as the sale price of the said lands. The Court, thereupon, granted the said motion and allowed ten (10) days for compliance with the same motion, on the consideration that the objector, D. S. Lovett, pay into the registry of the Court the sum of One Thousand Dollars ($1,000.00) to be devoted to the payment of the costs in the said cause. The cause came on again for hearing before the Court on the 25th day of November, 1925, and the objector not being ready to pay the sum of Fifty-five Thousand Five Hundred Dollars ($55,500.00), as aforesaid, the Court made an order purporting to confirm the report of the sale made by the commissioners appointed for that purpose. This decree of the 25th day of November, 1925, is the only decree of the Court confirming a sale of the lands involved in this cause, and this decree makes no reference to the report of the commissioners concerning the lands

involved in Tract Two of the said lands, to D. S. Lovett. On the said 25th day of November, 1925, the Court made a further decree fixing the attorney's fees in the said cause and directing the commissioners to execute proper deeds of conveyance, and to pay the purchase money from the aforesaid sale into the registry of the Court, to be divided according to the interests of the parties involved.

On February 27th, 1926, D. S. Lovett and H. W. Lovett filed a notice of appeal, which appeal was from the decree of the Court of February 14th, 1924, determining the interest of the parties before the Court in the lands considered in said decree, and appointing commissioners to make a partition of the said lands; from the decree of the Court of June 13th, 1925, sustaining the exceptions of George Allen, to the report of the majority of the commissioners appointed to make a partition of the lands described in the decree of February 14th, 1924; from the decree of the Court of September 20th, 1925, confirming the report of the commissioners that the lands considered could not be partitioned, and directing that all of the lands described in the decree of February 14th, 1924, should be sold at public sale; from the decree of November 16, 1925, requiring D. S. Lovett to pay into the registry of the Court One Thousand Dollars ($1,000.00) to be devoted to the payment of the costs of the original cause as a consideration upon which the report of sale submitted by the commissioners should not be confirmed; from the decree of November 25th, 1925, confirming the report of the commissioners that the lands described in the original bill of complaint and the separate answer of George Allen were sold at public sale on November 2nd, 1925; and from the decree of November 25th, 1925, fixing the attorney's fees in the cause and requiring D. S. Lovett to pay more than his proportionate share of the costs of the said cause. This appeal was prosecuted in the name of all

of the complainants as described in the bill of complaint, but was in fact instituted by D. S. Lovett and H. W. Lovett.

On the said 27th day of February, 1926, the appellants filed an assignment of errors and application for a transcript of record, together with written directions to the clerk for making up the said transcript of record.

On or about the 5th of March, of this year, the appellants, H. W. Lovett and D. S. Lovett, applied to this Court for an order of severance, allowing the said H. W. Lovett and D. S. Lovett to prosecute this appeal without the same being joined in by C. C. Lovett, Mrs. H. B. Neel, Mrs. Eunice Burnett and Mrs. Julia Bragdon, who are named as complainants in the bill of complaint, and praying for process to issue from this Court directed to the said parties and requiring them to show cause on the return day of the appeal why the said motion should not be granted. Such process issued from the Court on the 10th day of March of this year, and was duly served upon the parties, and an order of severance was subsequently granted by this Court as prayed for.

The appellants have assigned as error each of the orders and decrees of the Court below mentioned in the notice of appeal above referred to. The only briefs that have been filed in this Court were filed in behalf of appellants, H. W. and D. S. Lovett, in support of their assignments of error; and, in opposition thereto, by two of their co-complainants in the Court below against whom severance was granted, C. C. Lovett and Mrs. Eunice Burnett, who argue for an affirmance.

BROWN, J., after stating facts:

It is contended by the appellants that the decree of the lower Court taking jurisdiction of the land not included in the bill of complaint, but only before the Court, if at all,

upon the separate answer of George Allen, and decreeing the partition of all of said lands as a unit, and all the subsequent orders and decrees appealed from were fundamentally erroneous, and without jurisdiction and void. The proposition underlying this contention is that the tract of land described in the answer, not being legally brought before the Court, and being by it included as a portion of the entire tract decreed to be partitioned, rendered the proceedings void as to both tracts, among others, for the reason that if the tract in the answer had not been included by the Court in its decree, the commissioners might have reported that the tract described in the bill could be fairly and equitably partitioned without a sale, and that this fundamental error likewise affected the interest of each of the parties in the proceeds of the sale.

But it is contended by appellees that the several orders and decrees of the court below which are complained of here by the appellants, who were complainants in the court below, were made either at the instance of and for the benefit of the appellants, or with their tacit consent and without objections or exceptions by them, and that appellants are therefore not in a position to complain or assign error thereon. It is particularly pointed out that appellants took no exception in the court below to the said answer of George W. Allen and that it was upon the motion of all the complainants, including these two appellants, that an examiner was appointed to take testimony after this answer was filed; and that the commissioners appointed by the Court included in their report all the lands, those described in the answer as well as in the bill, which the Court had decreed to be partitioned, and that it was on appellants' motion that this report was confirmed and the property ordered sold at public auction, as shown by the recital in the Court's decree on page 143 of the transcript.

Appellees cite the case of Farrell v. Frost Investment Company, 73 Fla. 191, 74 So. 217. In that case it was held, that where a Court of equity hears and determines a controversy of such character that jurisdiction may be given by consent, when the parties, without objection or question as to the mode of procedure, go on to a hearing, neither should be heard to complain afterwards as to the Court's jurisdiction. It was consented before this Court in that case that the bill was so mulitifarious as to show that the Court was without jurisdiction, but this contention was held untenable by this Court. In the opinion, Mr. Justice ELLIS, speaking for the Court, also held that appellant was not in a position to raise the question, and said: "If the Court was not wholly incompetent to grant the relief sought in the bill, the method pursued to question the form of the bill, or the Court's jurisdiction, we think, would not avail. No question was raised until after the testimony was taken (if then) as to whether the Court had jurisdiction to entertain a bill for partition, to establish a resulting trust, and for an accounting. There are subjects which a Court of equity has no power to hear and determine, even by consent of parties, but if the subject-matter be of such character that jurisdiction may be conferred by consent, the defendant will not be heard to complain if he makes no objection to a hearing, but participates in it. In this case a Master was appointed, much testimony was taken and a decree rendered upon the merits against the defendant who then makes objection here to the Court's jurisdiction."

It was further held in that case that in considering the question of multifariousness, the matter particularly involved is convenience in the administration of justice, and if this can be accomplished by the mode of procedure adopted, an objection for multifariousness should not be allowed. The Court obviously had jurisdiction of the subject matter

and of the parties in that case, and in holding that a party defendant could not wait until the hearing before raising the question of the expendiency of including all of the related matters in the single litigation, this Court announced a sound principle of law. See also Decottes *et al.* v. Clarkson, 43 Fla. 1, 29 So. 442; Rivas v. Summers, 33 Fla. 539, 15 So. 319; Jones v. Fox, 23 Fla. 454, 2 So. 700.

It is contended, however, by appellants that the above cases are not in point in the instant case, but that there was here a jurisdictional defect which could not be waived—that is, a defect going to the subject matter of the cause.

There is some confusion in the use of this term "subject matter" in some of the cases dealing with the question of jurisdiction. Sometimes it is applied with reference to the power of the Court to deal with the class of cases to which the particular case belongs, and sometimes it is applied to the *res* within the Court's control or under its jurisdiction, or to the rights—that is the question of personal or property rights, the controversy—before the Court in the particular case. The rule that judisdiction of the subject matter in the general abstract sense—the power of the Court to adjudicate the class of cases to which the particular case belongs —cannot be conferred by the acquiescence or consent of the parties is so universally recognized as to require no citation of authority. The kind of jurisdiction referred to by this rule is the power conferred on the Court by the sovereign— which means with us the Constitution or statute, or both— to take cognizance of the subject matter of a litigation and the parties brought before it, and to hear and determine the issues and render judgment upon the issues joined. Brown on Jurisdiction, Sec. 2, 2nd Ed.; 35 C. J. 426; 16 C. J. 723, 734. "The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action." United States v. Arrodondo, 6 Peters 709. "Jurisdiction of the subject

matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power.'' Foltz v. St. Louis, etc. R. Co., 60 Fed. 316, 8 C. C. A. 635. But before this potential jurisdiction of the subject matter—this power to hear and determine—can be exercised, it must be lawfully *invoked* and called into action—the parties and the subject matter of the particular case must be brought before the Court in such a way that it acquires the jurisdiction and the power to act. There must be a right in dispute between two or more parties; a proceeding commenced under the proper rules of law; process must be served on the opposite party or parties in order that they may have an opportunity to be heard, or the property, if that be the subject matter of the action, must be within such jurisdiction, and the owner or person having the right to claim it, or to be heard, must be notified as required by law of the pendency of the proceeding. Brown on Jurisdiction, Secs. 2 and 9; 15 C. J. 734, 797. The jurisdiction and power of a Court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding *sue sponte.* The action of a Court must be called into exercise by pleading and process, prescribed or recognized by law, procured or obtained by some suitor by filing a declaration, complaint, petition, cross-bill, or in some form requesting the exercise of the power of the Court. If a Court should render a judgment in a case where it had jurisdiction of the parties, upon a matter entirely outside of the issues made, it would of necessity be arbitrary and unjust as being outside the jurisdiction of the subject-matter of the particular case, and such judgment would be void and would not withstand a collateral attack, for upon such matter a presumption would arise that the parties had had no opportunity to be heard. The pleading

bringing the matter before the Court need not necessarily be sufficient in law to withstand the test of a demurrer, but as a general rule it must state, at least inferentially, each material fact necessary to warrant the Court to deliberate thereon and grant the relief accorded, which must usually be the relief prayed, or at least not foreign thereto —though as to the latter, the form of relief, when different from that asked the judgment or decree may be merely voidable, but not void.   Brown on Jurisdiction, Sec. 2a; Ingram-Dekle Lumber Company v. Geiger, 71 Fla. 390, 71 So. 552.   So that, when it is said that a Court has jurisdiction of the subject-matter of any given cause, if these words are to be given their full meaning, they imply, generally speaking, (1) that the Court has jurisdictional power to adjudicate the class of cases to which such case belongs; and (2) that its jurisdiction has been *invoked* in the particular case by lawfully bringing before it the necessary parties to the controversy, and (3) the controversy itself by pleading of some sort sufficient to that end; and (4) when the cause is one *in rem*, the Court must have judicial power or control over the *res*, the thing which is the subject of the controversy.   This, in a general way, is what we mean when we say that a Court has "jurisdiction of the subject-matter and the parties" to a cause.

As shown by the statement of facts, the only pleading by which the additional tract of land described in the answer of George Allen was brought before the Court was such answer itself.   This pleading purported to be the separate answer of the defendant George Allen to the bill of complaint. It admitted that the parties named in the bill owned in co-tenancy the property described in the bill, but further alleged that at the time of his death the common ancestor was the owner of an undivided two-thirds interest in other lands, describing them, the other one-third interest being

owned by one of the complainants, D. S. Lovett, which rendered the moieties or fractional interests owned therein by the parties to the suit somewhat different from their several interests in the property described in the bill. It is not alleged that these additional lands were contiguous or adjacent to the lands described in the bill, or that the lands described in the bill and those described in the answer combined to form one tract of land; though the description indicates that some of the lands contained in the answer adjoined at least a portion of the land described in the bill. It cannot be said that any reason appears upon the face of the pleadings why all of these lands should not have been included in the bill for partition. Neither does it appear that they together constituted one entire tract. The so-called answer does allege that a partition or division of the lands described therein, owned by the complainants and the defendants, should be made, and prayed that in adjudicating the rights and interests of the several parties to the suit, that a division or partition not only of the lands described in the bill, but also of the lands described in the answer, be made between the parties according to the course of practice in the Court and the statute for such cases made and provided and according to the respective rights and interests of the parties interested therein. This document designated itself as the separate answer of George Allen, and did not pray that it be considered as a cross-bill or counter-claim, nor did it pray that the bill be amended so as to include these lands, nor did it pray any process against any of the parties to the suit. It cannot be considered in a mere negative sense, that is, as setting up merely defensive matter to defeat the bill which is the ordinary function of a mere answer. It was the evident purpose of this document that the Court should grant the relief prayed in the bill, but in addition thereto it asserted a right to the

partition and division at the same time of all the lands owned by the parties as tenants in common, those included in the answer as well as those included in the bill, and contained a prayer for affirmative relief in this, that it prayed the Court to make a division or partition in the same suit of the lands described in the answer along with those described in the bill. It must, therefore, be considered as an answer in the nature of a cross-bill, or as an answer attempting to set up, under the statute, a counterclaim against the complainants of such a nature as might have been the subject of an independent suit in equity against them, as well as the other parties to the suit, so as to enable the Court to pronounce a decree in the same suit "both on the original and the cross-claim." See Sec. 3120, Revised General Statutes.

We do not mean to say that where a bill seeks a partition of a tract of land held in co-tenancy that a defendant co-tenant can not, by way of answer, which is ordinarily a defensive pleading, set up as a defense against the bill the failure to pray for partition of the entire tract. Ordinarily, such a suit should include all the lands of the co-tenancy, and if it does not do so, any party defendant may insist that the omitted land or lands be embraced in the suit and that the persons be made parties thereto whose presence is necessary to the proceedings. 30 Cyc. 176; 20 R. C. L. 732; Koon v. Koon, 55 Fla. 834, 46 So. 633. Whether this rule applies where separate and distinct tracts of land are owned by the same tenants in common as contradistinguished from a single connected tract does not seem to have been made clear by the authorities. However, the cases where this rule has been invoked appear to be cases involving a single and distinct tract of land. The underlying principle of this rule seems to be stated in Sec. 508 of Freeman on Co-tenancy and Partition, where it is said:

"A tract held in common cannot be partitioned by frag-
ments.    Hence the grantee under a deed from one of the
co-tenants purporting to convey by metes and bounds a part
of the larger tract, cannot enforce a partition of the portion
in which alone he has any interest.    The suit for partition
should always embrace the whole tract held by the co-ten-
ancy.''    This would seem to apply to cases involving a par-
ticular, single and connected tract.    If it be conceded that
the lands here involved all constitute a single and contig-
uous tract of land, or substantially so, we think it must be
conceded that the defendant co-tenant, George Allen, could
have interposed by way of answer as a good defense to the
bill the fact that such bill did not embrace the entire tract
held in co-tenancy by the parties.    This defense could not
have been set up by demurrer, for, to have thus made the
point, it would have been a speaking demurrer.    That this
defense could be made by answer to the bill is also sup-
ported by the language of Sec. 3118 of Revised General
Statutes.    When so set up, the Chancellor could require
the complainant to so amend his bill as to include the addi-
tional lands, or in default thereof dismiss the bill.    How-
ever, as above stated, this so-called answer, by its terms
did not set up these additional lands of the co-tenancy in
order to defeat the bill, nor as a defense against it, but
manifestly for the purpose of having the Court adjudicate
and decree a partition of such lands along with the other
lands described in the bill.

Turning, therefore, to a consideration of this pleading
in its affirmative aspect, we will consider whether it was
sufficient as a cross-bill to bring these additional lands be-
fore the Court, and, if not, whether it was sufficient under
the Act of 1915 appearing as Secs. 3118-3123 of Revised
General Statutes, to accomplish such purpose.

In the very able brief of counsel for appellants it is con-

tended that said answer is not sufficient as a cross-bill, in that it did not state the purport of the original bill, called upon no one to answer it, did not make or name any persons as parties defendant thereto, and contained no prayer for process against any of the parties, especially the two minor co-defendants, and that no process of any kind was issued thereunder. That while a guardian *ad litem* had, on motion of complainants, been appointed, and had filed a formal answer to the original bill, this was done before the separate answer of George Allen was filed, and that such guardian *ad litem* never took any action with reference to such answer, nor was in any way called upon to do so. The general rule is that process should be prayed and served on all defendants to a cross-bill. 21 C. J. 353, 505; 10 R. C. L. 489-490, and cases cited; Indian River Mfg. Co. v. Wooten, 48 Fla. 271, 37 So. 731. The point is further made that the answer could not be regarded as a cross-bill, because a cross-bill, while it may and usually does introduce new facts and new issues not disclosed by the original bill, must be confined to such new facts and issues as relate to the subject matter of the original bill; whereas this document attempts to bring in a new subject matter, a tract of property not mentioned in any way in the original bill, 2 Daniel's Chanc. Pldg. & Prac. 1548, *et seq.;* 21 C. J. 508; Special Tax School District v. Smith, 61 Fla. 782, 54 So. 376; Mathews v. Lindsay, 20 Fla. 962; Mattair v. Payne, 15 Fla. 682; Buckmaster v. Kelley, 15 Fla. 180; Shipman Eq. Pldg. 304-8; Hogg v. Hogg, 107 Fed. 807, 814. "It is a well settled rule of chancery practice that matters sought to be investigated by cross-bill must be germane to the subject involved in the original bill. New and distinct matters, not embraced in the original suit, should not be introduced. A cross-bill must grow out of the matters alleged in the original bill, and is used to bring the whole

dispute before the Court, so that there may be a complete decree touching the subject matter of the suit.'' Fletcher's Eq. Pldg. & Prac. 895. A cross-bill is a bill filed by a defendant in a suit against a plaintiff, or some other defendant, or both, in the same suit touching the matter in question in the original bill. Florida Chancery Practice (by Armstrong and Donahue, 1927) 229; Finlayson v. Lipscomb, 16 Fla. 751. After diligent search, we have not been able to find any case, *quasi in rem*, or involving questions concerning, or the disposition of, real property, in which a defendant was permitted to bring in by cross-bill entirely separate and distinct property from that described in the original bill. Whether this could be done, in a partition proceeding where the parties to the original suit also held under the same co-tenancy an additional separate tract of land, is a difficult question which it is not necessary for us here to decide. It would probably depend to some extent upon the circumstances of each particular case. Where the bill sought to partition a part only of a single tract, any defendant could either defeat it by answer, or require amendment of the original bill so as to include the whole tract, or bring in the omitted lands by cross-bill. But where the bill covers all of a single tract, which could possibly be partitioned among the co-tenants without sale, the Court might not permit a defendant to bring in by cross-bill an entirely different and disconnected tract, though owned by the same parties as co-tenants, which might or would result in making a partition in specie impossible and thus requiring a sale for division. Such may have been the case here, though none of the parties make the point. But we do decide that this answer was defective as a cross-bill in that it did not state the purport of the original bill, made no one a party defendant thereto, contained no prayer for process, and no process was issued thereon. If it be con-

ceded that these defects in the cross-bill were waived by the *appellants,* even as to the lack of process, this cannot be said as to Allen's *co-defendants,* and the failure to serve the infant co-defendants with process or notice of any sort was not only waived by them or their guardian *ad litem,* but it could not have been.

Counsel for appellants make the further point that this additional land could not have been brought in by cross-bill, or by answer in the nature of a cross-bill, or by answer setting up a counter-claim under Sec. 3120, Revised General Statutes, for two additional reasons: (1) It is not permissible by cross-bill to obtain relief which defendant can procure by insisting on the filing of a proper original bill, (30 Cyc. 228; Shipman's Eq. Pldg. 3061; Pritchard v. Littlejohn, 128 Ill. 123, 21 N. E. 10) and (2) that under our statutes, Secs. 3203-3209, Revised General Statutes, the Court had no jurisdiction to decree partition, or sale for partition, of any lands unless they were described in the *bill.*

Before entering upon a discussion of our statutes relating to partition, it might be observed that this Court has held that, as a general rule, a cross-bill in a partition suit is neither necessary nor proper. See Koon v. Koon, 55 Fla. 834, 841, 46 So. 663, citing 5 Encyc. Pldg. & Prac. 636; Fletcher's Eq. Pldg. & Prac., Sec. 888, and authorities cited in Note 5; 5 Current Law 1166, Note 45.

This principle is particularly applicable under our practice in suits for partition. While the jurisdiction of equity to adjudicate such causes is of rather ancient origin and well established, independent of statute, our practice in dealing with partition suits is more or less statutory. Camp Phosphate Co. v. Anderson, 48 Fla. 226, — So. —. The Legislature, as far back as 1844, adopted a rather comprehensive statute on the subject, consisting of eleven sections,

vesting jurisdiction exclusively in the Chancery Courts and outlining the procedure, which, with a few minor changes, now appears as Secs. 3202 to 3209, Revised General Statutes, above cited. Sec. 3202 reads as follows: "Suits for partition of real estate shall in all cases be *by bill* in Chancery, and all proceedings, except where herein otherwise provided, shall be as in other cases in Chancery." (Italics ours.) And Sec. 3205, which is entitled "Form and Contents of the Bill," expressly provides that *the bill* "shall set forth a description of the lands or premises of which partition is prayed," etc. Applying the well-known rule of statutory construction, *expressio unius est exclusio alterius* (25 C. J. and cases cited), as well as the former holding of this Court that in suits for partition cross-bills are as a rule both unnecessary and improper, it would appear to be a safe interpretation of the law to hold that, as a general rule, the only proper way in which to bring lands before the Court for partition is by *the bill*. If any defendant has the right to have any additional lands brought in for partition in the same action, he may take the proper steps to have the Court require the complainant to amend his bill so as to embrace such additional lands. We do not mean to say by this that, in no case, could a departure from this procedure be waived by the parties; but the method just mentioned is the proper practice for getting the property before the Court for adjudication.

As appears from what has already been said, if the answer of defendant Allen be considered as a cross-bill, it would have been at least fatally insufficient to bring in the minor co-defendants as parties thereto, inasmuch as there was no process by publication or otherwise prayed for or served upon them, and they were not in any way called upon to defend as would have been necessary in the case of a cross-bill, and the record does not show any appearance

for or waiver by them, or their guardian *ad litem* for them, so as to cure this lack of process, if indeed such a thing was legally possible.

It remains for us to question the effect of defendant Allen's answer construed in the light of Secs. 3120-21 of of Rev. Gen. Stats.   These sections read as follows:

"3120.   May set out set-off or counter-claim.—The answer must state, in short and simple form, any counter-claim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counter-claim against the plaintiff which might be the subject of an independent suit in equity against him, such set-off or counter-claim, so set up, shall have the same effect as a cross-suit, so as to enable the Court to pronounce a final judgment in the same suit both on the original and cross-claims.

"3121. When case deemed at issue.—Unless an answer assert a set-off or counter-claim, no reply shall be required without special order of the Court or judge, but the cause shall be deemed at issue upon the filing of the answer, and any new affirmative matter therein shall be deemed to be denied by the plaintiff. If the answer include a set-off or counter-claim, the party against whom it is asserted shall reply within twenty days after the filing of the answer, unless a longer time be allowed by the Court.   If the counter-claim is one which affects the rights of other defendants, they or their solicitors shall be served with a copy of the same within ten days from the filing thereof, and the said defendants shall have twenty days after the service thereof within which to file a reply, unless the Court allow further time therefor.   In default of a reply, a decree *pro confesso* on the counter-claim may be entered as in default of an answer to the bill.''

This Court has said, in Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 So. 318, that it was not the

purpose of these statutes to forbid the use of cross-bills in proper cases, although they expressly provide for obtaining affirmative relief upon answers in classes of cases stated in the act.

It would appear from these sections that if the answer merely sets up "new affirmative matter," defensive in character, such as would be appropriate to an ordinary answer in equity, designed to defeat the purpose of the bill, without asserting any set-off or counter-claim, no reply shall be required without a special order from the Court, and the cause will be deemed at issue upon the filing of the answer. Morrill v. Burg, 80 Fla. 606, 86 So. 566. But if the answer includes a "set-off or counter-claim," the party against whom it is asserted must reply thereto within twenty days as required by the act. This would indicate that no service is required when the set-off or counter-claim is asserted only against the complainant. But the statute goes on to provide that, if the counter-claim is one which affects the right of *other defendants, they or their solicitors must be served with a copy of the same within ten days* from the filing thereof, and the said ·defendant shall have twenty days after the service thereof within which to file reply, unless further time is allowed, and in default of a reply to decree *pro confesso* on the counter-claim may be entered as in default of an answer to the bill. As explained in Sec. 3120 such answer may, without cross crossbill, set out any "set-off or counter-claim" against the plaintiff which "might be the subject of an independant suit in equity against him," and that such set-off or counter-claim, so set up, shall have "the same effect as a cross-suit," so as to enable the Court to pronounce a final judgment in the same suit both on the orginial and cross-claims.

Defendant Allen's answer manifestly did not assert a set-off, within the legal meaning of that term as usually

understood, but assuming that it did in substance set out *a counter-claim* against the complainants, *which might have been the subject af an independent suit in equity against them,"* and Allen's co- defendants as well, that is, a suit for the partition of the lands described in the answer, and that such counter-claim might have had "the same effect as a cross-suit so as to enable the Court to properly pronounce a final judgment in the same suit both on the original bill and the counter-claim" set up in the answer, the fact remains that the "other defendant" whose rights were affected by such counter-claim, were not served with a copy of the same in the manner set forth in Sec. 3121. As a copy of the answer setting up the counter-claim was not served upon defendant Allen's co-defendants, the two infant defendants, "or their solicitors", as required by the statute, the property described in such counter-claim was not brought into Court as to them, and the decree for the sale of such lands was as to them, ineffective and void. As to the adult *complainants,* no service on the counter-claim was required by the statute. They were by the statute presumed to take cognizance of such answer and counter-claim and required to reply thereto within twenty days, and having failed to so reply without excuse they were subject to a decree *pro confesso* on such counter-claim; so they cannot now be heard to complain because of the Court's allowance thereof—unless this action of the Court was, for other reasons, fatally and fundamentally erroneous.

But we must now recur to the question whether the answer, in setting up the ownership by the parties to the suit of these additional lands, and asking for their adjudication along with the lands described in the bill, asserted a "counter-claim" within the meaning of the statute. This involves first an inquiry as to such meaning.

Bouvier's Law Dictionary, Edition of 1897, defines

counter-claim as "A liberal practice introduced by the re-formed codes of procedure in many of the United States, and comprehending recoupment and set-off, q. v., though broader than either."

Webster's New International Dictionary gives the following definition: "Counter, or opposing, claim; law, a claim of matter constituting a distinct cause of action made by a defendant in an action as an offset to a claim made on him, and distinct from his defense. The counter-claim is in effect a distinct action which is allowed to be brought in order to reduce the amount and cost of litigation. At the common law no counter-claim can be made, but each cause of action can be sued only in a separate action. Counter-claim included both set-off and recoupment. In England, under the Judicature Acts, the defendant may set up any right or claim he may have against the plaintiff; in the United States set-off exists generally, but the wider counter-claim is allowed only in the code States, where the provisions vary."

This term seems to have been first introduced in this country by court procedure acts relating to actions at law, and its meaning in this connection is quite clearly and comprehensively stated in 25 Am. & Eng. Encyc. of Law, p. 568, as follows:

"There is a plain distinction between a defense and a counter-claim. A counter-claim must be a cause of action, and seeks affirmative relief, while a defense merely defeats the plaintiff's cause of action by a denial or confession and avoidance, and does not admit of affirmative relief to the defendant. A defense cannot be turned into a counter-claim merely by attaching a prayer for relief. The same facts may, however, constitute both a defense and ground for a counter-claim. But in such a case, if it is intended to insist upon the matter as a counter-claim, it must be

pleaded as such and not as a mere defense. A pleading cannot be at once both an answer and a counter-claim. In some States the statute requires counter-claims to be expressly so designated in the answer. In other States there is no such provision, and it is not necessary directly to aver the fact. If the answer sufficiently, in apt words, in substance and in fact sets up a counter-claim, it must be so treated. So if the facts stated constitute a defense, they will be so treated, regardless of the name given by the pleader. A prayer for affirmative relief is almost of controlling importance in determining whether a counter-claim or a defense is pleaded. Counter-claim as now used and understood includes both recoupment and set-off, and is broader than both, including matters which do not fall under either head, as, for example, equitable demands. A counter-claim is intended to secure to a defendant all the relief which either an action at law or a bill in equity or a cross-bill would have secured on the same state of facts. A counter-claim differs from a recoupment in that under a counter-claim the defendant may have an affirmative judgment where he establishes a demand in excess of the plaintiff's demand, whereas in the case of recoupment, whatever the damages proven by the defendant, they can go only to reduce or extinguish the claim against him. Again, recoupment must arise out of the contract or transaction upon which the plaintiff's claim is founded, whereas, in most States, in actions upon contract, causes of action arising out of distinct contracts may be counter-claimed. Recoupment implies an admission of the plaintiff's claim; a counter-claim does not. The object of the statute authorizing counter-claims is to enable parties to settle and adjust all their cross-claims in a single action, thus avoiding circuity of action and a multiplicity of suits. The statute should be liberally construed to effect this end.''

See also 24 R. C. L. 793-796; 34 Cyc. 629, *et seq.;* 2 Words and Phrases, 1645; Krausse v. Greenfield, 61 Ore. 502, 123 Pac. 392, Ann. Cases, 1914B, 115, and note on p. 119.

These sections of the Revised General Statutes, derived from the Act of 1915, follow pretty closely the Rules of Court adopted in England following the Judicature Act of 1873. In the English Edition of Daniell's Chancery Practice, published in 1914, we find the following:

"And by the Rules of Court it is provided that a defendant in an action may set off, or set up, by way of counterclaim against the claims of the plaintiff, any right or claim, whether such set-off or counter-claim sound in damages or not, and such set-off or counter-claim is not to have the same effect as a cross-action, so as to enable the Court to pronounce a final judgment in the same action, both on the original and on the cross-claim. But the Court or a Judge may, on the application of the plaintiff before trial, if in the opinion of the Court or Judge such set-off or counter-claim cannot be conveniently disposed of in the pending action, or ought not to be allowed, refuse permission to the defendant to avail himself thereof. * * *

"The right to make a counter-claim is given and regulated by the above statutory provision and rule, and by other rules mentioned in this section. A counter-claim may seek relief either against the plaintiff solely, or against the plaintiff and any other person or persons, whether the latter be or be not already parties to the action; but in any case to constitute a counter-claim, relief must be claimed against the plaintiff. * * *

"A defendant is, *prima facie,* entitled to seek by way of counter-claim against the plaintiff, or against the plaintiff and any other person, jointly, severally, or in the alternative, any relief which he might have claimed in an action

brought by himself against the plaintiff, or against the plaintiff and such third person respectively; but he cannot join a third person to be a joint plaintiff with himself in a counter-claim against the plaintiffs; and if it appear that the counter-claim cannot be conveniently disposed of in the action, it may, by order of the Court or a Judge, be excluded."

In the case of Krumrine v. Krumrine, 106 So. 131, where in a divorce proceeding by a non-resident complainant against a resident defendant, relief was denied to the complainant, the question arose whether a divorce could be granted to the defendant where her answer not only denied the grounds of divorce alleged against her in the bill, but alleged ample grounds for divorce as against the complainant, and concluded with a prayer for affirmative relief, that is, a prayer that a divorce be granted to her from her husband. The Court below denied such relief to the defendant, and she appealed. This Court held that the affirmative relief prayed for in the answer should have been granted, and in the opinion by Mr. Justice Ellis in that connection said: "If the Court has jurisdiction of the cause to administer complete justice between the parties, then the decree was erroneous, because under the Act of 1915, c. 6907 (Laws of Florida, Secs. 3118-3120, R. G. S.), the defendant in her answer could state any counter-claim arising out of the transaction which is the subject-matter of the suit without a cross-bill; such counter-claim being the subject of an independent suit in equity against the complainant, having the same effect as a cross-suit, so as to enable the Court to pronounce a final judgment in the same suit both on the original and cross-claims."

The opinion in this case was unequestionably correct in holding that a defendant may by answer, and without cross-bill, set up any counter-claim arising out of the transaction

which is the subject-matter of the suit, but the further question arises in this case whether or not a defendant may not also, without cross-bill, set out any counter-claim against the complainant, "which might be the subject-matter of an independent suit in equity against him," and having "the same effect as a cross-suit," although such counter-claim may constitute an entirely distict cause of action and may not have arisen out of the transaction which is the subject-matter of the suit, nor have had any connection therewith. We think this question must be answered in the negative. Liberal as the decisions both in this country and in England have been in giving to the counter-claim a comprehensive force and effect, we think that, construing Sec. 3120 as a whole, it recognizes the fundamental and cardinal principle that there must be some legal or equitable connection between the matters pleaded as a counter-claim and the matters alleged in the original bill. Standley v. Northwestern Mutual Life Ins. Co., 95 Ind. 254; 25 Am. & Eng. Encyc. of Law, 574-5, 581; 34 Cyc. 631; 24 R. C. L. 794; Krausse v. Greenfield, *supra*; Davis v. Frederick, 12 Pac. 664; Slone v. Slone, 59 Ky. 339; Keifer v. Summers (Ind.), 25 N. E. 1103; Romaine v. Brewster, 27 N. Y. Supp. 138; Carpenter v. Manhattan Life Insurance Company, 93 N. Y. 552, 556-7; Minn. Threshing Machine Co. v. Darnall, 83 N. W. 266. Apparently tending to the contrary view, see Am. Mills Co. v. Am. Surety Co., 260 U. S. 360. The use, in the first clause of this section (3120 R. G. S.), of the words "any counter-claim arising out of the transaction which is the subject-matter of the suit, we think underlies and gives color to the entire section, and that the further language regarding "any set-off or counter-claim against the plaintiff which might be the subject of an independent suit in equity against him," is not in conflict therewith, for innumerable instances might be cited wherein the matter set

up as a counter-claim (or by an ordinary cross-bill in equity), while connected with the subject-matter of the original bill, or arising out of the transaction which is the subject-matter of such bill, might also afford ample grounds for an independent suit in equity by the defendant against the complainant. Canstruing this statute as a whole, both in the light of the language used and the fundamental principles of equity practice obtaining in this jurisdiction both before and at the time of the passage of the act, while the term "counter-claim" probably covers a broader scope than the familiar cross-bill in chancery, we do not think that it can be said that, by this statute, the legislature intended to provide that a defendant can, in' an answer by way of counter-claim, set up a matter constituting and entirely distinct cause of action foreign to and not connected in any way with the matters stated in the original bill. It must set up matter arising out of or connected with the subject-matter of the original bill and germane thereto, as is the case with a cross-bill, or it must in the language of the statute, set out matter "arising out of *the transaction* which is the subject-matter of the suit."

But there is we think, ground for the contention here that the matter set up by the defendant Allen in his answer was connected with, or arose from, "the transaction which is the subject-matter of the suit," that is, the cotenancy of the parties to the suit, arising from the death of the common ancestor, which made them, according to the pleadings, his heirs-at-law, and, as such, cotenants of all the lands owned by him at the time of his death, both those described in the bill and the answer, and hence within the scope of the word counter-claim as used in the statute.

Although, as above shown, defendant Allen should have taken proper steps to have required the complainants to amend their bill so as to include all the lands held by the parties as cotenants as provided by Sections 3203, 3205,

Revised General Statutes, which is the proper statutory procedure, instead of attempting to bring in the additional lands by way of counter-claim in his answer, we are of the opinion that this point of procedure was waived by the complainants, as above shown, and that, as to them, construing the answer in the light of the remedial statute above quoted, such answer operated to bring the additional subject-matter therein described before the Court as to them, and that by reason of their acquiescence in this procedure, and in the action of the Court thereon, the said complainants are not in a position to raise the question in this Court so far as this mere form of procedure *per se* is concerned.

However, the answer and counter-claim was ineffective as to defendant Allen's co-defendants, the two minors, Mamie Lovett Fletcher and Ben Charles Allen; defendant Mrs. Susie Lovett having been shown to be without any interest. They were not made parties defendant thereto or served with a copy thereof as required by Section 3121. As there was neither actual nor constructive service upon them, and they were not given an opportunity to be heard, the additional property was not brought into Court so far as they were concerned, nor were they brought in as parties defendant by the pleading setting it up. It necessarily follows that as to them, and their interest in the property described in the counter-claim, the Court was without jurisdiction of the subject-matter set out in the counter-claim. Nor can it be said that this defect in the jurisdiction was in any way waived by the two infant co-defendants, or their guardian *ad litem*—if such were possible. 31 C. J. 1132, 1143. Infants cannot be "waived" into court.

In the well-reasoned case of Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 772, this Court said: "The statute requires the suit to be brought by 'one or more of several joint tenants, tenants in common or coparceners,

against their co-tenants, coparceners or others interested in the lands to be divided.' It requires all of such co-tenants or coparceners to be made parties to the suit if known. In such suits the rights and interests of necessary and indispensable parties can not be adjudicated when they are not properly before the Court. Nelson v. Haisley, 39 Fla. 145, 22 So. 265. It was error, therefore, for the Court to decree partition, or to determine that the defendant was the equitable owner of the interest to which W. N. Camp held the legal title, as W. N. Camp was not a party to the suit, and could not be bound by the decree.   *   *   *

*   *   * It (the statute) can not be construed as authorizing the Court to decree partition, and if that can not be had, a sale of the property, where only a part of the several known joint tenants, tenants in common or coparceners are parties to the suit, nor as authorizing it to decree that the equitable title to a portion of the property is in a defendant where the legal title stands in the name of a known person not a party to the suit. For this error in the decree it must be reversed." See also Yaeger v. N. & S. etc. Phosphate Co., 82 Fla. 38, 89 So. 340.

Under the principle laid down in the cases just cited, it follows that although the lack of necessary parties was not insisted upon in the lower Court, this deprived the Court of authority to decree partition and hence constituted reversible error, and the decrees here appealed from are invalid. See also 30 Cyc. 201, 202, and cases cited. But we are at once confronted with the inquiry as to whether these appellants can here raise this question. The general rule is that a party is not entitled to appeal from a judgment or decree wholly in his favor. 2 R. C. L. 56. And it has been held by this Court that irregularities in chancery practice committed at the defendant's instance and by his consent, are not available to reverse a final decree entered against him.

Thompson v. Kyle, 39 Fla. 582, 23 So. 12. Also, error complained of must have been of a prejudicial character to the complaining party.

It will have been observed in this case that after the filing of the separate answer of George Allen, the lands set out in the bill and those described in the answer, were thereafter in every proceeding from the decree of the Court of February 14, 1924, decreeing a partition of the lands and appointing commissioners to make partition, down through the decree of the Court of November 25, 1925, purporting to confirm the sale of the lands by the commissioners, except that they were ordered sold separately as Tracts 1 and 2 respectively, considered and treated as one group or unit of land. The first commissioners appointed by the decree of February 14, 1924, in attempting to make partition, considered them as one unit and the subject of partition proceedings. They then reported that they could not make a partition of the lands. The same subject-matter was before, and the same report was made by, the second group of commissioners appointed by the Court. It may be that it was the presence of the additional land submitted on the separate answer of George Allen, that influenced the commissioners in reporting to the Court that the lands could not be partitioned. It is impossible to say how much the presence of these additional lands in all of the proceedings in this cause influenced the course and determination of the cause. That error was committed is beyond doubt, and this error was inextricably interwoven in the entire progress of the cause in the Court below subsequent to the filing of such answer. If the inclusion of these additional lands prevented a partition of lands which should have been partitioned without resorting to a sale for division, then this error defeated the prime object of the suit, for in partition proceedings a sale of the lands should not be

ordered unless it be first established to the satisfaction of the Court that a partition in specie can not be made without great prejudice to the owners. In the present case there were two sets of commissioners appointed to attempt a partition of the lands, showing an effort by the Court to distribute the lands by partition and allotment among the proper parties, before the Court finally entered a decree of sale. Furthermore, the money ordered distributed to each of the parties interested in the land involved in the partition, represented the share of such parties in all of the lands, the lands included in the bill and those set forth in the answer. It follows that the share which each has received is not his proper share, and the decrees of the Court below cannot be divided so as to make them effective concerning a part of the lands and not effective as to the others. In addition to this, one of the appellants was a purchaser of a part of the lands sold under the decree of the Court, and the invalidities in such decrees hereinabove pointed out must necessarily affect his interest as a purchaser. The error was therefore prejudicial in its nature.  .

In 2 R. C. L. 56, cited appellees, the general rule is laid down as above stated, but it will be observed that it was postulated upon the party appealing having received a judgment or decree *wholly* in his favor. But it is stated in the same paragraph that, ''A party may appeal from a judgment in his favor when the Court entering the judgment has committed some error prejudicial to him. For example, if the judgment in favor of the plaintiff is for a less amount than it ought to be, he may take an appeal or sue out a writ of error to review it. So, also, a plaintiff may obtain a reversal of his own judgment for irregularities which may have intervened in the Court below, in order that he may commence another suit and obtain a legal and valid judgment.'' In Hale *et al.* v. Crowell's Admrs.,

2 Fla. 534, it was held: "That a party may resort to a court of error to obtain the reversal of his own judgment, if it has been so rendered that he may sustain injury by it, is a principle too well settled to be now contested" (citing authorities). It was also held in that case that, "The rule that a party shall not take advantage of an error for his benefit does not apply to errors of the Court, as where it pronounced a wrong judgment." In the opinion, the following quotation from Beecher v. Shirley, 8 Coke 58, is quoted with approval: "Without going further into the authorities, it is clear that a plaintiff may obtain a reversal of his own judgment, for irregularities which may have intervened in the Court below, in order that he may commence another suit, and obtain a legal and valid judgment, as well as where errors have been committed against him." This question is thoroughly treated in a note to the case of Williams v. Breitung, 3 Ann. Cases 506, 510. It is there said: "A party may prosecute a writ of error to obtain a reversal of his own judgment if it has been so rendered that he may sustain injury by it." And again: "When the judgment is in favor of the party objecting, he may prosecute a writ of error when the judgment is one not authorized by law and which can in no way be enforced by legal process." And further: "Error may be prosecuted by a plaintiff when judgment was entered in his favor against one only of several defendants."

A decree rendered in the absence of an indispensable party will be reversed, and an objection of this character can be urged for the first time in an appellate Court, or be considered by the Court of its own motion. Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 So. 237. In Craver et al. v. Spencer, 40 Fla. 135, 23 So. 880, it was held that "this Court will of its own motion reverse a decree rendered in the absence of necessary parties." In Yaeger v. N. & S.

Phosphate Co., *supra,* it was said in the opinion by Mr. Justice ELLIS on page 44 of 82nd. Fla., ''If there had been a decree in complainant's favor, it would have been reversed on appeal because of the absence of a necessary party.'' And it was held in that case that a decree awarding a partition of land in which a person interested was not made a party will be reversed on appeal. This is also held in Nelson v. Haisley, 39 Fla. 145, 22 So. 265, and in Lyon v. Register, 36 Fla. 273, 18 So. 589.

Our conclusion is, therefore, that these appellants can in this Court raise the questions above mentioned going to the jurisdiction of the Court and affecting the validity of the decrees appealed from.

As complainants in the court below, they were entitled to an effective decree of partition. One of the defendants brought in additional lands in an irregular manner by way of answer and counter-claim, and without bringing in the minor co-defendants as parties thereto, as above pointed out. This error was not cured in any way so as to make the decree valid as to such infants. By reason of this error, the court below could not render an effective decree of partition, and, unless this error can yet be remedied as hereinafter outlined, appellants will be entitled to a reversal of such decree and the other decrees appealed from which were affected by the same fundamental error.

It is contended by counsel for appellees that this Court cannot consider certain other decrees appealed from, namely, the decree of February 14, 1924, ascertaining the interests of the parties and appointing commissioners to make partition, and the decree of June 13, 1925, for the reason that the appeal in this cause was not entered within six months after the recordation of said decrees, under Sec. 3168, Rev. Gen. Stats. This case presents an appeal from a final decree and from all the interlocutory decrees in the cause, as contemplated by Sec. 3169, Rev. Gen. Stats.,

which entitles a party to defer "the entry of his appeal from interlocutory orders and decrees until after the entry of the final decree or the end of the cause as prescribed by law." The final decree in the present case is a decree of the Court dated September 30, 1925, confirming the report of the commissioners that there could be no. partition, ordering a sale of the lands, and appointing commissioners to make such sale, and the notice of appeal was filed within six months from the entry of such decree. This not only entitled the appellants to appeal from the interlocutory decrees entered before such final decree, but on an appeal from the final decree alone they could have assigned errors upon such interlocutory decrees, though not embraced in the entry of appeal. However, they are so embraced in this case. This question is squarely decided in Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722, and Jacksonville M. & R. Ry. Co. v. Bradley, 38 Fla. 139, 20 So. 821, and Banks v. Guinyard, 63 Fla. 334, 58 So. 229. This contention of appellees is, therefore, not well founded.

We might call attention to the fact that the order of the chancellor, rendered November 25, 1925, confirming the report of sale, while probably intending to confirm the sale of both tracts of land, does not expressly confirm the sale except as to one tract, to-wit, that part of the land designated as tract No. 1, and fails to definitely confirm the sale of tract No. 2 as reported by the commissioners.

As the fundamental error in this case was the failure to bring in as parties defendant to the counter-claim set up in the answer of George Allen the two minor co-defendants, the mere procedural errors above pointed out having been waived by all the adult parties to the cause, and the court having erroneously proceeded to adjudicate with reference to the interest of said minors in and to the additional lands brought in by said answer and counter-

claim, this error can still be cured in such a way as to validate the proceedings as to all parties if the said minors have become of age or had their disabilities of non-age removed since the trial of this case in the court below. If within ninety days from the going down of the mandate of this case, the said Mamie Lovett Fletcher and Ben Charles Allen, the infant defendants to the original bill above referred to, shall have become *sui juris*, i. e., shall have become twenty-one years of age or shall have had their disabilities of non-age legally removed, and shall enter an appearance in the cause and file a reply to the counter-claim set up in the answer of defendant George Allen, consenting in effect to the granting of the relief prayed in such counter-claim as to the additional lands in which they were interested, and shall also file in the court below a formal ratification of the orders and decrees rendered by the chancellor in said cause, and adopting the reports of the commissioners filed September 16th, 1925, and November 2nd, 1925, respectively, and accepting their share of the proceeds of the sale of the lands described in both the bill and the said answer as full compensation for their interest in said lands and the proceeds thereof, then the orders and decrees appealed from in this case shall stand and be considered as affirmed; but if said Mamie Lovett Fletcher and Ben Charles Allen shall not have become *sui juris* and shall not have taken the action above set forth within said period of ninety days, the orders and decrees appealed from in this case shall stand reversed. Kentucky Land Co. v. Elliott *et al.* (Ky.), 15 S. W. 518; Blue v. Waters, 71 S. W. 889.

Certain objections made by appellants to some of the orders and decrees appealed from, but not above discussed are not considered meritorious, and our disposition of this case makes their discussion unnecessary.

We express our appreciation of the able and carefully prepared briefs submitted by counsel for both sides which have been of material assistance to us in our consideration of the important questions presented.

This cause is ordered remanded to the lower court and the decrees appealed from to be considered and to stand as reversed unless the errors pointed out are cured by the action of the infant defendants as above outlined within ninety days from the going down of the mandate of this Court.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.